**UNITED STATES of America,**
**Appellee–Cross–Appellant,**

**v.**

**Jeffrey EVANS, Ronald Wilson, also known as Big Ron, Edward Ingenito, also known as Buster, Joseph Scicchitano, also known as J.D., Carlos Wiggins, also known as Los, Jeff Bellamy, John Bryant, also known as J.B., Sherry Marie Boula, Omar T. Ferguson, Jamie Friel, James V. Hamilton, also known as Black, Gary Hanson, also known as Butch, Thomas Johnson, also known as T, Amos Keith, Kim Kohl, David Sharp, Earl Thomas, also known as Slim, Lorraine Benjamin, Scott Crandall, Susan Fisher, Jeff Gayton, Jimmy Leon, also known as Jimmy Dale, Kevin Martinelli, La-**

mont Parks, also known as Otis, Terri Pearman, Michael Rhodes, also known as Micah, Demetrious Sayles, also known as Meechie, Defendants,

Donald Benjamin, Jr., also known as Ducky, Neal Benjamin, Defendants–Appellants–Cross–Appellees.

Docket Nos. 02–1260(L), 02–1270(CON), 02–1291(XAP), 02–1293(XAP).

United States Court of Appeals, Second Circuit.

Argued: Oct. 20, 2003.

Decided: Dec. 10, 2003.

Vincent E. Doyle III, Connors & Vilardo, Buffalo, NY, for Defendant–Appellant–Cross–Appellee Donald Benjamin, Jr.

John J. Lavin, Lavin & Kleiman, P.C., Buffalo, NY, for Defendant–Appellant–Cross–Appellee Neal Benjamin.

Thomas S. Duszkiewicz, Assistant United States Attorney, for Michael A. Battle, United States Attorney for the Western District of New York, Buffalo, NY, for Appellee–Cross–Appellant.

Before: McLAUGHLIN, CABRANES, SACK, Circuit Judges.

MCLAUGHLIN, Circuit Judge.

Defendants, Donald Benjamin, Jr. ("Donald") and Neal Benjamin ("Neal"), appeal from convictions and sentences for various drug-related offenses entered in the United States District Court for the Western District of New York (Elfvin, *J.*).

In a summary order also filed today, we address most of defendants' arguments and find them without merit. In this opinion, we consider: (1) defendants' claim that the district court violated their right to be present at all stages of the trial under Federal Rule of Criminal Procedure 43 by communicating with, and dismissing, a juror without consulting them or their counsel; and (2) the Government's contention that the district court erred by departing downwardly in sentencing Donald and Neal.

Although we ultimately reject defendants' challenge regarding the discharged juror and affirm their convictions, we find the district court's conduct to be problematic. Because the Government correctly objects to the defendants' sentencing, we vacate their sentences and remand to the district court for resentencing.

## BACKGROUND

The evidence established that between 1994 and 1997 brothers Donald and Neal

Benjamin ran a drug distribution ring in and around Olean, New York. The ring dealt in marijuana, cocaine, and crack and employed numerous individuals, including several youngsters under age eighteen.

On April 28, 1998, Donald and Neal and twenty-seven other conspirators were charged with various counts of drug possession, distribution, and conspiracy to possess and to distribute.

On December 17, 1999, after a month-long jury trial, Donald was convicted of: (1) one count of conspiracy to possess with intent to distribute and conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846 as it relates to 21 U.S.C. § 841(a)(1); (2) five substantive distribution counts, in violation of 21 U.S.C. § 841(a)(1); and (3) one count of using a minor to distribute controlled substances, in violation of 21 U.S.C. § 861(a)(1), (2). Neal, in turn, was convicted of: (1) one count of the same conspiracy offense; and (2) one count of possession with intent to distribute and distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1).

On April 12, 2002, Judge Elfvin sentenced Donald principally to thirty years' and Neal to twenty years' imprisonment.

This appeal followed. As already noted, we dispose of the majority of defendants' claims in a summary order. We address here defendants' remaining juror-related claim and the Government's cross-appeal.

## DISCUSSION

### I. *Dismissal of Juror*

On the sixteenth day of trial, Juror # 3 suffered an asthma attack in the courthouse. This prompted Judge Elfvin to adjourn the proceedings early. Before the judge could speak to Juror # 3, however, the juror left the courthouse. The judge telephoned the juror at home and finally spoke to him at around 10 p.m. that evening. The judge learned that the attack was more serious than usual and that, after leaving the courthouse, Juror # 3 had gone to an emergency room and had been advised by his doctor to remain home the next day. While on the telephone, the judge excused Juror # 3 from the remainder of the trial. Nothing was said to counsel.

The next day, one of the defense attorneys noticed that Juror # 3 was gone and an alternate had taken Juror # 3's seat. In response to defendants' inquiry, Judge Elfvin described the conversation he had with the juror the previous evening. Donald's attorney objected to the procedure followed by the court.

### A. *The Law*

■ We review a district court's dismissal of a juror for an abuse of discretion. *See United States v. Millar,* 79 F.3d 338, 342 (2d Cir.1996). A dismissal should not be overturned without a showing of bias or prejudice to the defendant. *See id.* (citing *United States v. Gambino,* 951 F.2d 498, 503 (2d Cir.1991)).

■ Federal Rule of Criminal Procedure 43 provides that a defendant "shall be present ... at every stage of the trial." Fed.R.Crim.P. 43(a) (amended 2002). As such, "private communications between the judge and jury violate[ ] the unequivocal mandate of Rule 43." *United States v. Glick,* 463 F.2d 491, 493 (2d Cir.1972). There is a violation regardless of whether the communication concerns issues that are "personal" in nature and "unrelated to the trial," or issues that bear on the substance of the proceedings. *United States v. Taylor,* 562 F.2d 1345, 1366 (2d Cir.1977).

■ Rule 43 violations are analyzed under the traditional harmless error rule provided by Federal Rule of Criminal Procedure 52(a). *See Rogers v. United States,*

422 U.S. 35, 40, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975); *see also Glick,* 463 F.2d at 493. The Supreme Court has counseled that "the nature of the information conveyed to the jury, in addition to the manner in which it [is] conveyed," bear on whether a Rule 43 violation is harmless. *Rogers,* 422 U.S. at 40, 95 S.Ct. 2091.

In the context of a judge's *ex parte* communication with the jury, this Court has yet to determine whether the proper standard for harmless error is harmless beyond a reasonable doubt, *Chapman v. California,* 386 U.S. 18, 26, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), or a fair assurance that the verdict was not affected, *Kotteakos v. United States,* 328 U.S. 750, 764–65, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). *See Glick,* 463 F.2d at 494 n. 12; *cf. United States v. Ronder,* 639 F.2d 931, 935 (2d Cir.1981). However, we need not decide this question, because the district court's error here was harmless under both standards.

### B. *The Merits*

■ Defendants argue that the district court violated their rights by communicating with Juror # 3 outside their presence and by deciding to dismiss the juror without first consulting them. According to Donald's brief (which Neal incorporates into his appeal by reference), "[t]he district court should have given more deference to [their] right to a trial before the jury [they] selected." Specifically, defendants contend that the district court "acted without the benefit of an 'informed discussion' with counsel on the proper course" to follow. They also claim that dismissal was inappropriate because "[t]he juror's condition necessitated only a one day postponement of the trial," *not* outright dismissal.

Although we find no prejudice warranting reversal, we take this occasion to cau-tion courts about the risks of *ex parte* conduct.

In *United States v. Houlihan,* 332 F.2d 8 (2d Cir.1964), we affirmed a district court judge's unilateral discharge of a juror, who was a nurse, because her patient had suffered a heart attack the previous day. *Id.* at 12–13. We held that the private communication and subsequent dismissal were proper, given the emergency, and found neither error nor prejudice. *Id.* In so doing, we acknowledged that:

> Situations may sometimes arise when a respect for the rights of jurors will require the judge to take immediate action without consulting counsel—e.g., if a juror is taken so ill that he cannot come to court or has a family emergency requiring him to leave during the night or over a weekend.

*Id.* at 13. Although we did not expressly focus on the effect of changing the jury's composition, it was implicit that no prejudice resulted from the substitution of an alternate juror. *Id.; see also United States v. Rodriguez,* 573 F.2d 330, 333 (5th Cir.1978) ("Every replacement involves a change in the jury's composition. How much weight should be given to this factor is a matter for the sound discretion of the trial judge.").

■ Defendants seek to distinguish *Houlihan* by arguing that Juror # 3's asthma attack did not rise to the level of an "emergency." The distinction, however, is one of degree only, and the decision to discharge a juror remains within the sound discretion of the district court. *See Millar,* 79 F.3d at 342. Judge Elfvin acted within the ambit of that discretion: the dismissed juror had had an asthma attack that was more severe than usual and his doctor had advised him to stay home the following day.

Defendants' efforts to differentiate *Houlihan* on legal grounds are unpersua-

sive. Each case they cite to support their claim of abuse of discretion implicated a far more egregious error than occurred here. *See, e.g., Rogers,* 422 U.S. at 40, 95 S.Ct. 2091 (finding prejudice in judge's unilateral response to a deliberating jury's inquiry about leniency, followed by "verdict of 'guilty with extreme mercy' within five minutes" of communication); *Glick,* 463 F.2d at 493–94 (holding that "the judge's bare assertion that the jury could recommend leniency" in absence of counsel was "highly prejudicial").

More cogent is *United States v. Taylor,* 562 F.2d 1345 (2d Cir.1977), where we addressed a challenge to a judge's private, mid-deliberations communication with a juror about a death in the juror's family. We affirmed the court's decision not to dismiss the juror. *Id.* at 1366 & n. 13. Although we acknowledged that "private communications with the jury have been said to 'create a presumption of prejudice' " which can be overcome by "showing lack of prejudice," we went on to hold that the court's error was harmless under the circumstances. *Id.* at 1365–66 (quoting *United States v. Treatman,* 524 F.2d 320, 323 (8th Cir.1975)); *see also id.* at 1366 (noting that deliberations "continued for almost two days of the four and one-half day total *after* the juror spoke to the judge").

In this case, the *ex parte* communication occurred during the trial and well before the case was sent to the jury. There is, moreover, no indication that the remaining jurors were adversely influenced by the communication. Nor did the dismissal produce a drastic shift in the jury's composition. *Cf. United States v. Hanno,* 21 F.3d 42, 48 (4th Cir.1994) (holding judge's failure to consult counsel before excusing six jurors to be prejudicial); *United States v. Gay,* 522 F.2d 429, 435 (6th Cir.1975)

(finding discharge of three jurors prejudicial given "total absence of a record").

We find that the court properly exercised its discretion in discharging a single juror whose asthma attack could have unduly delayed an already lengthy trial. Although the court was ill-advised to exclude counsel from its discussion with, and decision concerning, the juror, we are persuaded that the communication in no way contributed to defendants' convictions. *See Chapman,* 386 U.S. at 23–24, 26, 87 S.Ct. 824. The Rule 43 violation was harmless under the circumstances presented here.

## II. *Government's Cross–Appeal*

The Presentence Investigation Reports ("PSR") of the United States Probation Office recommended an offense level of 46 for each defendant and a criminal history category of VI, the highest possible category. Offense level 46 plus criminal history category VI yields a range of life imprisonment under the United States Sentencing Guidelines ("Sentencing Guidelines").

### 1. *Donald*

Applying the 2000 version of Sentencing Guidelines § 5G1.2(d), the PSR recommended that Donald serve the statutory maximum term for each count consecutively. This would have resulted in a total sentence of 240 years, but Donald sought a downward departure on a number of grounds. Although adopting the PSR's recommended offense level and criminal history category, the district court sentenced Donald to a total of only thirty years' imprisonment. Specifically, the court imposed a sentence of ten years' imprisonment per count (despite a thirty-year maximum for six of the counts, and a sixty-year maximum for the other count), and ran five of Donald's seven ten-year

sentences concurrently rather than consecutively.

## 2. *Neal*

The PSR recommended forty years' imprisonment for Neal pursuant to Sentencing Guidelines § 5G1.2(d), *i.e.,* the twenty-year statutory maximum for each of Neal's two counts of conviction. Neal did *not* seek a downward departure. Despite adopting the PSR's classifications, the district court sentenced Neal to two ten-year sentences to run consecutively, for a total of only twenty years' imprisonment.

### A. *The Law*

■ In *United States v. McLean,* 287 F.3d 127 (2d Cir.2002), we stated that: "[i]n the case of multiple counts of conviction, [section 5G1.2(d) of] the sentencing guidelines instruct[s] that if the total punishment mandated by the guidelines exceeds the statutory maximum of the most serious offense of conviction, the district court *must* impose consecutive terms of imprisonment to the extent necessary to achieve the total punishment."

*Id.* at 136 (quoting *United States v. Angle,* 254 F.3d 514, 518 (4th Cir.2001) (*en banc*)) (alterations in original). Thus, where multiple convictions are involved, Sentencing Guidelines § 5G1.2(d) ordinarily requires a district court to impose consecutive statutory maximum sentences to the extent necessary to fashion a sentence within the range of "total punishment" set forth by the Sentencing Guidelines. *Id.*

■ A court's authority to depart from the Sentencing Guidelines is carefully circumscribed. *United States v. Butler,* 954 F.2d 114, 121 (2d Cir.1992). A court may depart only where "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Com-

mission." U.S. Sentencing Guidelines Manual § 5K2.0 (2000) (policy statement) (quoting 18 U.S.C. § 3553(b)); *see also Burns v. United States,* 501 U.S. 129, 133, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991). Indeed, "[b]efore a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline." *United States v. Thorn,* 317 F.3d 107, 125 (2d Cir.2003) (quoting *Koon v. United States,* 518 U.S. 81, 98, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)) (alteration in original).

There are also procedural hurdles that a sentencing court must clear before making a departure. *First,* the parties must be given sufficient notice of a potential departure. *Burns,* 501 U.S. at 135–36 & n. 4, 111 S.Ct. 2182. *Second,* "at the time of sentencing," a district court must state "in open court" the "specific reason" for its departure. 18 U.S.C. § 3553(c)(2); *see also Butler,* 954 F.2d at 121 ("Congress has expressed its intent, in no uncertain terms, that when a sentencing court departs from the applicable guideline range, that departure must be justified by *specific* reasons.").

■ We review a district court's sentencing departures for an abuse of discretion. *See United States v. Sentamu,* 212 F.3d 127, 135 (2d Cir.2000). In so doing, we examine only those reasons articulated by the district court at the time of sentencing. *See Butler,* 954 F.2d at 121. Nevertheless, we will not vacate a sentence and remand for resentencing if an error is harmless. *See United States v. Tropiano,* 50 F.3d 157, 162 (2d Cir.1995).

### B. *The Merits*

■ The Government argues that the district court erred by making downward departures in sentencing both defendants. It maintains that the sentences must be

vacated and the case remanded for resentencing because: (1) no notice was provided of the possible departures; (2) the district court failed to articulate its reasons for departing downwardly; (3) the record is barren of any reasons sufficient to justify the downward departures; and (4) the district court erred by not classifying Donald as a prior felon and increasing his sentence accordingly.

We agree that the district court failed to articulate its reasons for departing from the range set forth by Sentencing Guidelines § 5G1.2(d). Despite Donald's argument to the contrary, § 5G1.2(d) required consecutive sentences of statutory maximum terms to be imposed up to life imprisonment for each. defendant. *McLean*, 287 F.3d at 136; *see also United States v. Yousef*, 327 F.3d 56, 162–64 (2d Cir.2003). The court made no findings of fact or conclusions of law justifying its departures and thus leaves us at a total loss in reviewing defendants' sentences. *See Thorn*, 317 F.3d at 131. In response to the Government's inquiry about Donald at sentencing, the court stated only, in relevant part, "I must have downward departed . . . to get those three segments of ten years." With reference to Neal's sentence, the court was equally vague, saying, "I would have to assume that I have departed."

The basis for the departures subsequently provided by the district court in its published order of judgment for each defendant is equally obscure. The court merely cites Sentencing Guidelines § 5K2.0. This is hardly sufficient to satisfy 18 U.S.C. § 3553(c)(2), which requires articulation "in open court" of the "specific reason" for a departure. 18 U.S.C. § 3553(c)(2) (2000); *see also* 18 U.S.C. § 3553(c)(2) (2003) (stating that "reasons [for a departure] must also be stated with specificity in the written order of judgment and commitment"). Simply citing § 5K2.0

leaves us in the dark as to which "mitigating circumstance" the court relied on.

Because the departures drastically reduced each defendant's sentence—240 years down to thirty years in Donald's case, and forty years down to twenty years in Neal's—these procedural defects cannot be ignored. We, therefore, vacate the sentences and remand for resentencing in accordance with 18 U.S.C. § 3553(c)(2) and Sentencing Guidelines § 5K2.0. *See Tropiano*, 50 F.3d at 162 ("We will vacate a sentence and remand for resentencing if the district court fails to follow the procedures for making such a departure.").

We see no reason to address the Government's contention that *no* reasons exist to support a downward departure. Nor do we reach the merits of the Government's claim that the court erred by failing to enhance Donald's sentence on the basis of his prior conviction.

That the Government had no notice of the downward departures is also troublesome. As to Neal, no notice of a downward departure on *any* ground was provided by the court, the defense, or the PSR. As to Donald, the record's silence renders it impossible to determine whether the grounds on which Donald moved for a downward departure are the same grounds on which the court actually departed. On remand, we direct the district court to provide clear notice to both parties of any contemplated departure. *See Burns*, 501 U.S. at 135–36 & n. 4, 111 S.Ct. 2182.

\*     \*     \*     \*     \*     \*

In our summary order, we review the additional sentencing objections made by defendants and find them without merit.

## CONCLUSION

For the above reasons (as well as those stated in our accompanying summary order), we AFFIRM defendants' convictions,

but VACATE the sentences and Remand for resentencing.