64 A.3d 197

**Jaron Tyree GRADE**

v.

**STATE of Maryland.**

**No. 16, Sept. Term, 2007.**

Court of Appeals of Maryland.

April 3, 2013.

86

George E. Burns, Jr., Asst. Public Defender (Nancy S. Forster, Public Defender, Baltimore, MD), on brief, for Petitioner/Cross–Respondent.

Cathleen C. Brockmeyer, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Respondent–Cross–Petitioner.

Argued before BELL, C.J., RAKER *, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER (Retired, Specially Assigned), DALE R. CATHELL (Retired, Specially Assigned), JJ.

BELL, C.J.

The issue in this case is whether the trial court's substitution of a juror with an alternate, without having first notified counsel of the juror communication that prompted that action and sought counsel's response or input, violated Maryland Rule 4–326(d). Because Rule 4–326(d) vindicates the well-established right of a defendant to be present throughout the trial, including during jury deliberations, we shall hold that, under the facts of this case, it did.

## A.

Jaron Grade, the petitioner, was charged with, and, on December 3, 2004, was convicted by a jury in the Circuit Court for Baltimore County of, two counts of first-degree murder and use of a handgun in the commission of a crime. He was sentenced to two concurrent life sentences and a consecutive twenty year term of imprisonment. He contends that the trial court's replacement of a juror with an alternate juror without the knowledge or acquiescence of his counsel was a violation of Rule 4–326(d) and, therefore, reversible error.

On December 2, 2004, before adjourning for the day, the court inquired of the jury as to its preference with regard to when to begin deliberations, either immediately or on the

---

* Raker, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

following day, and whether any one of them had "any problem with being back" the next day. Having ascertained that the jury's preference was to begin deliberations the next day and acquiescing in that preference, it being satisfied that no juror or alternate had "any problem" with coming back, the court addressed the jurors and the alternates as follows:

"THE COURT: What I am going to ask you to do is this: As to the alternates, I am not going to excuse you yet, because something [could] happen with one of the regular jurors before deliberation begins tomorrow morning. I am going to ask you all please to come back tomorrow morning[.] When everybody gets here, I will excuse the alternates at that time, but please be back tomorrow. . . . Thank you.

"Do not begin to discuss anything with anyone yet. Do not begin deliberating until you get back together and everyone is here. I will ask you to come back, if you can come back earlier than 9:30. It might be helpful because it could be sometime while you are out deliberating. I would like to get started as early as possible, 9:15 or something like that works.

"All right. Please report to the jury room [then] at 9:15 tomorrow. Thank you."

The jury and the alternates thereafter were excused. The court then addressed counsel with regard to the next day's procedure:

"THE COURT: I will, of course, do what I just said I would do tomorrow morning, make sure we have twelve jurors here and ready to deliberate before deliberations begin, and I will excuse the alternates then.

"MS MEAD [Defense Counsel]: When do you want us here tomorrow, judge?

"THE COURT: Good question. I would think that you ought to be available not later than ten, I would think, because things will get started by that time. There may be questions and problems arise.

"MS MEAD: I will plan on being here at ten. Your law clerk has my cell phone. I will give him my cell phone and home number. I will probably be here earlier, but if he wants to call, if something else comes up."

When counsel arrived at court the next morning, they were informed of the court's communication with a juror and the action the court took in response to that communication:

"THE COURT: Here is the situation.... Okay. Just a matter of substituting a juror. I want to put it on the record what happened, we got a call about 20 after 9, 9:25 from Juror number 10, indicating she had an emergency of an undisclosed nature and she would at least 10:30 or later getting here, so I made a decision I would like to run by counsel. Nobody—Garrett was available, you were not here, so we seated Alternate Number 1 in lieu of Juror 10. They began deliberations about 9:30.... I'm sorry I couldn't bring it to your attention, I wanted to make sure I did as soon as possible.... As far, as substitution of alternates were concerned, we talked about it, I talked about it, said what the procedure would be if we turned up short, that's what happened, so we will just continue with...."

Following that statement, the petitioner's counsel objected "for the record." In response, the court accurately observed: "Well, you are certainly free to do that. You have a right to, I can't do anything about it now. What's done is done."

The petitioner posits that Rule 4–326(d) recognizes a defendant's right to be present at the various stages of the trial, a right reflected in our case law, *see, e.g., Midgett v. State,* 216 Md. 26, 36, 139 A.2d 209, 214 (1958), *Brown v. State,* 272 Md. 450, 457, 325 A.2d 557, 560 (1974), and in our rules, *see* Md. Rule 4–321,[1] as well as his right to counsel. Because the issue

---

1. Maryland Rule 4–321 provides:

"Presence of defendant.

"(a) When presence required. A defendant shall be present at all times when required by the court. A corporation may be present by counsel.

in this case involves the replacement of a juror who could have served, but not in the time frame that the court desired, he submits that it was one requiring counsel's presence and his input. Nevertheless, he complains, neither the petitioner nor his defense counsel was made aware promptly of either the juror communication or the court's decision, based on the juror communication and in the absence of counsel, to substitute an alternate for that person. The petitioner argues that his counsel was available, although not physically present, when the juror communication occurred and, therefore, that the court, at the least, should have waited until he was physically present and could provide input before replacing the juror with an alternate. In the alternative, the petitioner emphasizes that the juror should not have been replaced. The juror, he points out, indicated simply that she would be tardy, not that she would be unable to come to court or otherwise was unable, or unwilling, to perform her duties as a juror. Therefore, the petitioner asserts, the court could, and should, have waited for the juror's arrival.

Additionally, the petitioner denies that he acquiesced in the court's actions. Noting that his counsel received notification of the juror substitution only after it had been made and the jury had begun deliberating, and promptly objected to the trial judge's actions, he asserts that the December 2, 2004 colloquy with the trial court was limited to whether, and when, the alternate jurors would be dismissed. It did not address whether, or under what circumstance, they would be used to replace the jurors, who also were instructed to appear so that deliberations could begin. The petitioner asserts that his counsel provided contact information in anticipation of a situation, such as occurred in this case, in which input from counsel would be required to be given. Failure to notify him in

---

"(b) Right to be present—Exceptions. A defendant is entitled to be physically present in person at a preliminary hearing and every stage of the trial, except (1) at a conference or argument on a question of law; (2) when a nolle prosequi or stet is entered pursuant to Rules 4–247 and 4–248."

advance of substituting the alternate, the petitioner argues, violated Rule 4–326(d), requiring a reversal of his conviction.

The State's argument is threefold. First, it argues that the petitioner's counsel acquiesced in the trial court's "abundantly clear" plan of action for the alternate jurors, which was for them to return to the court the following morning before deliberation was to begin, in case one, or more, of the jurors was not available. Thus, the State argues, juror replacement was contemplated, and, therefore, prior consultation with counsel was not necessary. For that reason, the State further posits that the petitioner's objection was untimely; the petitioner objected the day the jury began deliberations, instead of the day before, when the critical colloquy with counsel, advising of his "abundantly clear" plan of action, occurred.

Acknowledging that the petitioner has a right to be present at all stages of trial, including all communications between the judge and the jury, the State secondly submits that Rule 4–326(d) is not applicable to the juror communication at bar. This is so, it asserts, because the communication does not "pertain to the action" or, in this case, the trial proceedings. The state further posits that even if Rule 4–326(d) contemplated the juror communication *sub judice,* the manner in which the court responded to the communication did not prejudice, or have a tendency to influence, the verdict.

Third, the State argues, alternatively, that reversal of the petitioner's conviction is "unwarranted" because the petitioner suffered no prejudice. The State submits that a trial judge has the discretion to replace the juror with an alternate to avoid delay, and abuses his or her discretion only when the judge acts "arbitrar[ily] and capricious[ly] or acts beyond the letter or reason of the law." Although it maintains that no abuse of discretion occurred in this case, the State argues that, even had there been, there was no prejudice to the petitioner and, thus, no basis for reversal. For this argument, the State relies on, *inter alia, State v. Cook,* 338 Md. 598, 659 A.2d 1313 (1995). There, the trial court dismissed a juror whom it "decided was unable to follow the court's instruc-

tions." *Id.*, 338 Md. at 617, 659 A.2d at 1323. Rejecting the petitioner's argument that, in so doing, the trial court committed reversible error, the Court explained:

> "[W]here, as here, a judge excludes a juror on grounds which are particular to the juror, rather than on characteristics which the juror may hold in common with a particular class of persons, we will give deference to the trial judge's determination and will not substitute our judgment for that of the trial judge unless the decision is arbitrary and abusive or results in prejudice to the defendant. The reason for such deference is based not only on the fact that the "remedy" for the exclusion of such a juror results in a jury no fairer than that which originally decided the case, but is also based on the fact that in evaluating the excluded juror, the trial judge has the opportunity to question the juror and observe his or her demeanor."

*Id.*, 338 Md. at 615, 659 A.2d at 1322. In addition to several other cases from various federal circuits,[2] the State finds *United States v. Evans*, 352 F.3d 65 (2d Cir.2003), to be illustrative of the juror substitution cases and instructive. In *Evans*, a juror had a severe asthma attack, causing the judge to replace that juror with an alternate, without consulting counsel.[3] *Id.* at 68. The appellate court found the error to be harmless because "situations may arise when a respect for the rights of jurors will require the judge to take immediate action

---

**2.** *Olszewski v. Spencer*, 466 F.3d 47 (1st Cir.2006); *State v. Campbell*, 126 Ill.App.3d 1028, 82 Ill.Dec. 39, 467 N.E.2d 1112, 1119 (1984); *Sneed v. State*, 209 S.W.3d 782, 788 (Tex.App.2006).

**3.** The rule the court was applying was Federal Rule of Criminal Procedure 43 (amended 2002), which provided that a defendant "shall be present ... at every stage of the trial." *United States v. Evans*, 352 F.3d 65, 68. The court explained that "'private communications between the judge and jury violate[ ] the unequivocal mandate of Rule 43.'" *Id.* (quoting *United States v. Glick*, 463 F.2d 491, 493 (2d Cir. 1972)). The court further opined that "[t]here is a violation regardless of whether the communication concerns issues that are 'personal' in nature and 'unrelated to the trial,' or issues that bear on the substance of the proceedings." *Id.* (quoting *United States v. Taylor*, 562 F.2d 1345, 1366 (2d Cir.1977)).

without consulting counsel—e.g., if a juror is taken so ill that he cannot come to court or has a family emergency requiring him to leave during the night or over a weekend." *Id.* at 69 (quoting *United States v. Houlihan,* 332 F.2d 8, 13 (2d Cir. 1964)). Thus, the State asks this court to uphold the petitioner's conviction by affirming the judgment of the Court of Special Appeals.

In an unreported opinion, the Court of Special Appeals affirmed the trial court's ruling that there was no reversible error. Holding that the replacement of a juror with an alternate was neither an abuse of discretion nor prejudicial to the defendant, it concluded that the ruling did not affect the verdict. Although acknowledging that the Rule alleged to have been violated was Rule 4–326(d), the intermediate appellate court primarily focused on Rule 4–312(b)(3),[4] pursuant to which, as interpreted by *Diaz v. State,* 129 Md.App. 51, 59, 740 A.2d 81, 85 (1999), trial judges have the discretion to replace an unfit juror with an alternate juror. The Rule provides for the replacement before deliberation of a juror who "becomes or is found to be unable . . . to perform a juror's duty" with an alternate juror. *See id.*

In *Diaz,* the trial court replaced a juror after a delay of only seven and a half minutes, and without inquiring into the reasons for the juror's absence. *Id.,* 129 Md.App. at 59, 740 A.2d at 85. Rejecting the argument that the substitution of the alternate prejudiced the defendant, the Court of Special Appeals stressed that the Maryland Rules are interpreted to "secure simplicity in procedure, fairness in administration, and elimination of unjustifiable expense and delay," Md. Rule 1–201(a), and held that while the trial judge's decision was not ideal, "even a premature dismissal of a juror would not be

---

4. Maryland Rule 4–312 was rewritten in December, 2007, after issuance of the intermediate appellate court's opinion in the present case. As a result of that, and subsequent amendments, juror replacement is now governed by Maryland Rule 4–312(g)(3), which similarly provides that a "trial judge may replace any jury member whom the trial judge finds to be unable or disqualified to perform jury service with an alternate. . . ."

cause for reversal." *Diaz,* 129 Md.App. at 61–62, 740 A.2d at 87. Again, its focus was Rule 4-312(b)(3) and whether an abuse of the discretion authorized by that rule had occurred. As to whether the petitioner had been prejudiced by the substitution, the intermediate appellate court concluded that he had not.

In the case *sub judice,* the replaced juror informed the trial court that she would be "arriving within the hour." Rejecting the petitioner's assertion that there was no harm in waiting for the juror to arrive, the Court of Special Appeals, characterizing "the issue [as] not so much one of fairness but of efficiency," (quoting *Tisdale v. State,* 41 Md.App. 149, 156, 396 A.2d 289, 293 (1979)), and emphasizing the trial judge's opposition to a delay of that length, determined that the trial judge did not abuse his discretion when he replaced the juror with the alternate, nor was the petitioner prejudiced, the intermediate appellate court concluded. The intermediate appellate court thus held that the petitioner's claim that the removal of a "very responsive and very attentive and very interested" juror affected the verdict, being pure speculation, did not "show how prejudice did or might have occurred." (Quoting *Diaz,* 129 Md.App. at 63, 740 A.2d at 87). We granted the petitioners' petition to this Court for a writ of certiorari[5] and the State's cross-petition.[6] *Grade v. State,* 399 Md. 32, 922 A.2d 573 (2007).

---

5. In his petition, the petitioner asked the following question:

"Did the trial court err in dismissing a juror without first notifying counsel of the juror communication and permitting counsel to respond?"

6. The State's cross petition asked:

"Where, prior to adjourning on the day before the jury was to begin deliberations, the court advised counsel that it would not release the alternate jurors until the next morning and not excuse them until the court confirmed that all of the impaneled jurors were there to begin deliberations, and in response to the court's statement of intention, defense counsel stated she could be reached the following morning, "if something else comes up," did Grade acquiesce to the court's substitution of jurors?"

## B.

In a criminal case, the defendant and the State have a right to be present at all stages of the trial. MD. CONST. Declaration of Rights, art. V; *Denicolis v. State,* 378 Md. 646, 656, 837 A.2d 944, 950 (2003); *Taylor v. State,* 352 Md. 338, 345, 722 A.2d 65, 68 (1998); *Stewart v. State,* 334 Md. 213, 224, 638 A.2d 754, 759 (1994); *Bunch v. State,* 281 Md. 680, 683–84, 381 A.2d 1142, 1143 (1978); *Midgett v. State,* 216 Md. 26, 36, 139 A.2d 209, 214 (1958). This right extends to any communication between the trial judge and the jury. *State v. Harris,* 428 Md. 700, 713, 53 A.3d 1171, 1178–79 (2012); *Midgett,* 216 Md. at 36–37, 139 A.2d at 214; *see also* Maryland Rule 4–231. We recently expanded on this point:

"This Court consistently has recognized that 'an accused in a criminal prosecution for a felony has the absolute right to be present at every stage of his trial from the time the jury is impaneled until it reaches a verdict or is discharged, and there can be no valid trial or judgment unless he has been afforded that right.' *Midgett v. State,* 216 Md. 26, 36, 139 A.2d 209, 214 (1958). This well settled constitutional and common law right, as we have often recognized, is guaranteed by Article 5 of the Maryland Declaration of Rights, *see Bunch v. State,* 281 Md. 680, 683–4, 381 A.2d 1142, 1143 (1978); *Brown v. State,* 272 Md. 450, 457, 325 A.2d 557, 560 (1974), and, in some measure, by the Fourteenth Amendment to the United States Constitution. It is also preserved by Maryland Rule 4–231. It is, moreover, well settled that any communications between a judge and the jury which pertain to the action constitute just such stages of trial at which the defendant is entitled to be present. *See Taylor v. State,* 352 Md. 338, 345, 722 A.2d 65, 68 (1998); *Stewart v. State,* 334 Md. 213, 224–25, 638 A.2d 754, 759 (1994); *Bunch,* 281 Md. at 685, 381 A.2d at 1144. Indeed, the Supreme Court of the United States, too, has recognized that it is important, 'especially in a criminal case,' for the defendant 'to be present from the time the jury is impaneled until its discharge after rendering the verdict.' *Shields v. United States,* 273 U.S. 583, 589, 47 S.Ct. 478, 479, 71 L.Ed.

787, 790 (1927). Therefore, and in that regard, the Supreme Court has cautioned against a court receiving 'a communication from the jury and answer[ing] it, without giving the defendant and his counsel an opportunity to be present in court to take such action as they might be advised . . . .' *Id.,* 273 U.S. at 587, 47 S.Ct. at 479, 71 L.Ed. at 789."

*Harris,* 428 Md. at 712–14, 53 A.3d at 1178–79. In that context, we also addressed the office of Rule 4–326(d):

"Rule 4–326(d) codifies these principles by providing that a court is 'obliged to notify the defendant and the State's Attorney of the receipt of [any juror or jury] communication before responding' to it. *Stewart,* 334 Md. at 222, 638 A.2d at 758. 'These prescriptions are mandatory, not directory . . . .' *Id.* We interpreted the Rule more recently in *Winder v. State,* 362 Md. 275, 322, 765 A.2d 97, 122–23 (2001), summarizing its mandate as follows:

'The rules governing communications between the judge and the jury are basic and relatively simple to adhere to in practice. If a judge receives a communication from the jury or wishes to communicate with the jury, he or she is required to notify the parties. The communication with the jury shall be made in open court on the record or shall be made in writing and the writing shall become part of the record . . . . [A] defendant has a recognized right to be present during communications between the judge and the jury during . . . trial. These rules are not abstract guides. They are mandatory and must be strictly followed.' "

*Id.,* 428 Md. at 714, 53 A.3d at 1179. *See Stewart,* 334 Md. at 222–23, 638 A.2d at 758; *Winder v. State,* 362 Md. 275, 322, 765 A.2d 97, 122–23 (2001); *Taylor,* 352 Md. at 345–46, 722 A.2d at 68; *Fields v. State,* 172 Md.App. 496, 513–14, 916 A.2d 357, 367 (2007).

■ Md. Rule 4–326(d) calls for open communication of all relevant information to the individuals whom the trial most affects. *Graham v. State,* 325 Md. 398, 414–15, 601 A.2d 131, 139 (1992); *Wagner v. State,* 160 Md.App. 531, 558, 864 A.2d

1037, 1053 (2005). The Rule calls for timely notification of jury communication so that counsel can have the opportunity to offer input. *Stewart,* 334 Md. at 223, 638 A.2d at 758; *Allen v. State,* 77 Md.App. 537, 545, 551 A.2d 156, 159–160 (1989). If the communication is not disclosed in a timely fashion or there has been no chance for input, then there has not been a "valid trial or judgment." *Midgett,* 216 Md. at 36, 139 A.2d at 214. Violation of this rule undercuts the defense's right to be present at all stages of trial.

The State contends that the record indicates that the court's previously announced decision, to retain the alternates to guard against problems that might occur with regard to regular jurors, put defense counsel on notice of its intention to use the alternates to address any such problems, and that counsel acquiesced in that decision.[7] Not surprisingly, the petitioner does not agree; he argues that, at no point did they agree that the judge could act to replace a juror selected by the parties, without notice being given and an opportunity to be heard being afforded him.

The State's position is that the trial judge informed the parties prior to the release of the jury and the alternates of how he would proceed and that, by not raising an issue with regard to the stated procedure, the parties acquiesced in, accepted, it. It relies on the colloquy the court engaged in with the jury and the alternates:

> "As to the alternates, I am not going to excuse you yet, because something could happen with one of the regular jurors before deliberation beings tomorrow morning. I am going to ask you all please to come back tomorrow morning, and if the twelve original jurors are all here, when everybody gets here, I will excuse the alternates at that time[,]"

and his follow-up comments to counsel after the jury and alternates had been dismissed:

---

**7.** The State alternatively argues that the petitioner's objection to the substitution of the juror came too late. Inasmuch as we shall conclude that the petitioner did not acquiesce in the court's actions, we need not address it.

"THE COURT: I will, of course, do what I just said I would do tomorrow morning, make sure we have twelve jurors here and ready to deliberate before deliberations begin, and I will excuse the alternates then."

■ We do not believe the petitioner's counsel acquiesced in the judge's replacement of any member of the jury with an alternate. The focus of the discussion on which the State relies was on the dismissal of all of the alternates, not on their replacement of regular jurors. Instead, therefore, the petitioner acquiesced only in the dismissal of the alternates, if all twelve of the original jurors were present.

To be sure, what is clear from the colloquy with the jury and the alternates and the follow-up with counsel is that the court was concerned about having sufficient jurors to proceed and, so, was focusing on when it would be wise and appropriate to dismiss them. It said as much when it informed the alternates that they were not going to be dismissed immediately "because something could happen with one of the regular jurors before deliberations begin." And the court confirmed that focus when it informed the alternates that "if the twelve original jurors are all here, when everybody gets here, I will excuse the alternates at that time," and told counsel that it would "do what [it] said [it] would," i.e., "make sure we have twelve jurors here and ready to deliberate before deliberations begin, and I will excuse the alternates then."

Of course, one may infer from the colloquy that the court intended both to take action to remedy the situation should something happen to a regular juror before deliberations began and the alternates were available and to communicate that intention to the parties. It is significant, however, that the court did not say that or elaborate, as it did with regard to its intention to dismiss the alternates, on any such intention should something happen to one of the regular jurors. That is understandable—that situation was a matter that would be remediable by use of the Rule 4–326(d) procedure. It is likely that that is what the court and the parties contemplated. When defense counsel inquired as to when they should arrive

at court, the court's setting of the time allowed for when "things will get started" and for "questions and problems." Counsel, also aware that "something else [could] come up," made sure that the court had all of her contact numbers. Such references hardly would have been necessary or, logically, they would have been more narrowly drawn were the State's view of the conversation the correct one.

In any event, as we have seen, all of the original jurors were not present the next day. Despite not having established, and obtained concurrence for, a course of action to be taken if all twelve original jurors were not present, and without complying with the notice provision of Rule 4–326(d), the court substituted an alternate for a regular juror. That was a scenario that the court did not clearly, if at all, discuss with counsel and, when the totality of the circumstances surrounding the colloquy with the jury and alternates and the court's follow-up conversation with counsel is considered, one that is not clearly implied. The inclusion of such a scenario into the contemplation of the parties, never mind the court, is ambiguous at best.

The State argues that the phone call in this case, from the substituted juror to the judge's chambers, is not a communication that is "contemplated" by Md. Rule 4–326(d). It reasons:

"The communication did not involve the juror's qualification to serve, as in *Bunch;* her potential for bias, as in *Noble;* or her distress about the deterioration in the deliberative process, as in *Stewart*. Moreover, the communication did not occur during deliberations as in *Denicolis, Midgett* and *Taylor*. The communication also did not involve an unsolicited discussion between the court and the jury, outside the presence of Grade or his counsel, concerning what would happen once the jury retired to deliberate, which this Court found apparently "innocuous" but rife with the potential for prejudice in a capital case because there was no record of the proceeding, as in *Winder*, 362 Md. at 323–24 [765 A.2d 97]."

Thus, it concludes, because "the communication between the court and Juror No. 10 pertained to the trial only in the sense that she was a juror and she was expected to arrive for deliberations," the judge's action, in this case, is not in violation of the Rule. We do not agree.

We recently considered the scope of Rule 4–326(d) and the meaning of "pertaining to the action," as used therein. *Harris*, 428 Md. 700, 715–16, 53 A.3d 1171, 1179–1180. We concluded that communications raising issues that "implicate and concern the juror's ability to continue deliberating" pertained to the action. *Id.*, 428 Md. at 715–16, 53 A.3d at 1180. The communication in that case was a telephone call informing the juror of his grandmother's death. *Id.*, 428 Md. at 705–06, 53 A.3d at 1174. It was initiated by the juror's father and received by the judge's secretary, who communicated the contents of the call to the juror. *Id.* In addition, she asked the juror if he was okay to continue and received his positive response. *Id.*, 428 Md. at 706, 53 A.3d at 1174. Although recognizing, as our cases have done, *see, e.g., Graham*, 325 Md. at 415, 601 A.2d at 139, that Rule 4–326(d) has no applicability to purely personal juror communications, we rejected the State's characterization of the communication in that case as one which "involved merely an administrative communication designed to further the orderly continuation of the proceedings." *Id.*, 428 Md. at 711, 53 A.3d at 1177–78.[8]

The communication in this case falls squarely within the ambit of Rule 4–326(d). A phone call from a juror to the presiding judge concerning her required attendance at court for deliberations, a matter directly relating, and related, to her duty as a juror, is squarely within both the letter and the

---

8. The State's rationale was that the exchange was not a formal examination of the juror's state of mind, being "designed simply to confirm the status quo ..., that the affected juror would return to continue deliberations," and that a communication between a trial court and a juror, concerning a juror's willingness or ability to continue to serve, is an "administrative" one that does not fall within the ambit of Rule 4–326(d). *State v. Harris*, 428 Md. 700, 711–712, 53 A.3d 1171, 1177–78 (2012).

spirit of Rule 4–326(d). It was far from a personal communication. Instead, it was a communication directed to the court, about a subject, the effect of which, if acted on, could, or would, affect the make-up of the fact-finding panel as determined by the parties and, in fact, it was later acted on with that very effect. It therefore "pertains to the action." Md. Rule 4–326(d) provides that if a communication "pertains to the action," then "[a]ll such communications between the court and the jury shall be on the record." That, in turn, contemplates that the court will notify both parties of the communication and give each of them an opportunity for input. That did not occur in this case. On the contrary, despite defense counsel having asked to be contacted if anything arose that was not previously discussed, the trial judge in this case discharged the juror and replaced her with an alternate without first notifying defense counsel. That was error.

 The State finally argues that reversal is not required because the petitioner was not prejudiced by the trial court's unilateral action.[9] Essential to the State's argument is that

---

**9.** The State also argues that the violation of Rule 4–326(d) was harmless. For the proposition that the Rule violation is subject to harmless error review, the State relies on *Rushen v. Spain,* 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983) *(per curiam); United States v. Walton,* 908 F.2d 1289, 1295–97 (6th Cir.1990), *cert. denied,* 498 U.S. 990, 111 S.Ct. 532, 112 L.Ed.2d 542 (1990); *Johnson v. State,* 915 F.2d 892, 893 (4th Cir.1990); *People v. Wright,* 52 Cal.3d 367, 276 Cal.Rptr. 731, 802 P.2d 221, 243–44 (1990), *cert. denied,* 502 U.S. 834, 112 S.Ct. 113, 116 L.Ed.2d 82 (1991); *State v. Hudson,* 331 N.C. 122, 415 S.E.2d 732, 739 (1992), *cert. denied,* 506 U.S. 1055, 113 S.Ct. 983, 122 L.Ed.2d 136 (1993); *Royal v. Commonwealth,* 2 Va.App. 59, 341 S.E.2d 660, 664 (1986), *rev'd on other grounds,* 234 Va. 403, 362 S.E.2d 323 (1987). *Rushen v. Spain* is illustrative of these cases. There, the Supreme Court held that *habeas corpus* relief would not be granted despite an *ex parte conversation* between the judge and juror, a conversation which should have been promptly disclosed to counsel. The Court reasoned that the "Constitution does not require a new trial every time a juror has been placed in a potentially compromising situation because it is virtually impossible to shield jurors from every contact or influence" and that the occurrence of harmless errors in a courtroom reflects "day-to-day" realities. *Id.,* 464 U.S. at 118–19, 104 S.Ct. at 455–6, 78 L.Ed.2d at 273 (citations omitted). These cases are all distinguishable. None of these

the court has the sole discretion to make the ruling at issue and that the defendant is not prejudiced by it. With regard to the former, the State does not account for, or acknowledge the need or availability of, pre-ruling input from counsel. With respect to the latter, it suggests that having the discretion to make the ruling is dispositive, as even an abuse of that discretion will not result in the prejudice necessary to entitle the defendant to relief.

It is true, of course, that a trial judge has discretion, pursuant to Md. Rule 4–312(b)(3), to make a juror substitution, to replace a juror with an alternate before deliberation, if that juror "becomes or is found to be unable . . . to perform a juror's duty." It is this discretion and its grant, unencumbered by any other Rule or restriction, on which the State relies. That is the same approach taken by the Court of Special Appeals: having determined that the court had the discretion, pursuant to Rule 4–312(b)(3), to remove the juror and replace her with an alternate, it rejected any notion that Rule 4–326(d) could impact the exercise of that discretion. In effect, for all intents and purposes, both the intermediate appellate court and the State begin, and end, the analysis with Rule 4–312(b)(3). Such an approach is flawed.

Md. Rule 4–312(b)(3), and the reliance the Court of Special Appeals and the State place on it, provide an incomplete analysis. Md. Rule 4–326(d) must also be interpreted and applied. The Rules overlap, addressing the same subject matter; thus, to the extent that they do, they must "be construed together and, to the extent possible, harmonized." *State v. Thompson*, 332 Md. 1, 7, 629 A.2d 731, 734 (1993); *see Gwin v. Motor Vehicle Admin.*, 385 Md. 440, 462, 869 A.2d 822, 834 (2005); *State v. Bricker*, 321 Md. 86, 93, 581 A.2d 9, 12 (1990); *In re Criminal Investigation No. 1–162*, 307 Md. 674, 690, 516 A.2d 976, 982 (1986). In that regard, the canons of construction applicable to statutes are equally applicable to rules. *Johnson v. State*, 360 Md. 250, 264, 757 A.2d 796, 804

cases involved the violation of a Rule comparable to Rule 4–326(d), the compliance with which has been held to be mandatory.

(2000); *State v. Romulus,* 315 Md. 526, 533, 555 A.2d 494, 497 (1989). Thus, full effect must be given to each Rule, *Thompson,* 332 Md. at 7, 629 A.2d at 734; *Bricker,* 321 Md. at 93, 581 A.2d at 12; *Farmers & Merchants Nat'l Bank of Hagerstown v. Schlossberg,* 306 Md. 48, 61, 507 A.2d 172, 178–79 (1986), so that each may stand on its own, but not contradict or undermine the purpose of the other. "[E]ach [Rule] must be given a reasonable interpretation, not one that is illogical or incompatible with common sense." *Thompson,* 332 Md. at 8, 629 A.2d at 735; *Gwin,* 385 Md. at 462, 869 A.2d at 835; *D & Y, Inc. v. Winston,* 320 Md. 534, 538, 578 A.2d 1177, 1179–1180 (1990).

To be sure, Rule 4–312(b)(3) authorizes the trial court to consider whether, by being tardy, a juror is, or becomes "unable" to serve as a juror, and to exercise its discretion in determining whether that juror will be retained. Rule 4–326(d), on the other hand, requires a trial court that receives a communication, "pertaining to the action," from a juror to notify both parties of that juror communication and to do so "as soon as practicable," and in any event, before responding to the communication, thus affording them the opportunity to provide input with respect to it.

In the case at bar, the juror communication, informing the court that she would be late, put into play both Rule 4–312(b)(3) and Rule 4–326(d). The prospect of delay not unexpectedly triggers concern on the part of the court with regard to the efficiency of the trial process, which implicates Rule 4–312's authorization to replace a juror. At the same time, it also implicates the juror's ability, albeit only temporally, to serve as a juror, which, because that question, in turn, affects, indeed changes, the make-up of the fact-finder, as determined by the parties, also pertains to the action, making Rule 4–326(d) applicable. Where, as here, more than one Rule addresses the same issue, neither overlapping Rule may be relied on, alone, to permit the trial court to fail to comply with all other applicable rules. Consequently, although Rule 4–312(b)(3) certainly applies and would permit a substitution,

Rule 4–326(d)'s requirement of notice and an opportunity for input, is likewise applicable and must be given effect.

In point of fact, there is no inconsistency between Rule 4–326(d) and Rule 4–312(b)(3). Where there is a triggering juror communication, compliance with Rule 4–326(d) neither infringes nor affects the trial judge's responsibility or exercise of discretion under Rule 4–312(b)(3). On the other hand, a trial court's failure to follow Rule 4–326(d) undermines and, indeed, renders nugatory the defendant's right, vindicated by that Rule, to be present at all stages of trial. *See Midgett,* 216 Md. at 36, 139 A.2d at 214.

*State v. Cook,* on which the State relies, is not to the contrary. In *Cook,* the defendant was charged with sexually abusing his stepdaughter. 338 Md. at 600, 659 A.2d at 1315. The juror note in that case inquired about where the mother was when the daughter was being abused as well as the nature of the sexual relationship between her mother and her stepfather. *Id.,* 338 Md. at 601, 659 A.2d at 1315. The juror note concluded that, if the mother and father were having sex and the father was raping his daughter every night, then the father "Had to be a good man!" *Id.*

The *Cook* court did not automatically or solely apply Md. Rule 4–312(b)(3) in deciding whether the juror should be removed from the jury panel. On the contrary, in compliance with the requirements of Md. Rule 4–326(d), "the trial judge held a meeting in chambers and shared with counsel the contents of a note sent to the judge." *Id.,* 338 Md. at 601, 659 A.2d at 1315. Both counsel were permitted to question the juror on the motivation for the note and to state their position on whether the juror should remain. *Id.,* 338 Md. at 602–604, 659 A.2d at 1316–17. Having received input from counsel, he was prompted to investigate the matter further. *Id.,* 338 Md. at 604, 659 A.2d at 1316–17.

*Diaz,* 129 Md.App. 51, 740 A.2d 81, is to like effect. There, only Rule 4–312 was at issue. Compliance with Rule 4–326(d)'s notice and input requirements were not involved because, after the trial court noticed that one of the jurors was

missing when trial was to begin, "[a] discussion then ensued among counsel and the court," at the conclusion of which "[t]he trial court replaced the absent juror with an alternate." *Diaz*, 129 Md.App. at 59, 740 A.2d at 85. The notification of counsel and their opportunity to have input are missing from the case at bar.

We do not agree that the petitioner was not prejudiced by the Rule violation. We recently addressed this issue in *Harris*, reiterating the principles that guide our prejudice inquiry:

"This Court has cautioned that the Maryland Rules 'are not guides to the practice of law but precise rubrics established to promote the orderly and efficient administration of justice and [that they] are to be read and followed.' *Isen v. Phoenix Assur. Co. of New York*, 259 Md. 564, 570, 270 A.2d 476, 479 (1970) (quoting *Brown v. Fraley*, 222 Md. 480, 483, 161 A.2d 128, 130 (1960)). As such, '[a] violation of one of these rules constitutes an error, normally, requiring such curative action or sanction as may be appropriate.' *Dove v. State*, 415 Md. 727, 742, 4 A.3d. 976, 984 (2010) (citing *Noble v. State*, 293 Md. 549, 557, 446 A.2d 844, 848 (1982)). The mandate of Rule 4–326(d) is unambiguous: 'The court shall notify the defendant and the State's attorney of the receipt of any communication from the jury pertaining to the action ... before responding to the communication.' *See Black*, 426 Md. at 341, 44 A.3d at 370. A failure to comply with its explicit mandate is error, and once such error is established, it only remains for this Court to determine whether that error was prejudicial to the defendant and, thus, requires reversal. *Taylor v. State*, 352 Md. 338, 354, 722 A.2d 65, 72 (1998). 'As the beneficiary of the error, the State has the burden of establishing that it was not prejudicial,' and '[a] reversal of the ... conviction is required unless the record demonstrates that the trial court's error in communicating with the jury ex parte did not prejudice the [defendant].' *Id.*, 352 Md. at 354, 722 A.2d at 72–3. Stated differently, it is error for a trial court to engage in a communication with the jury, or jurors, off the record, and without notification to

counsel, and that error is presumably prejudicial unless the State can affirmatively prove otherwise."

428 Md. at 720–21, 53 A.3d at 1183 (internal quotation marks omitted).

We note, at the outset, that the Court of Special Appeals placed the burden to establish prejudice on the wrong party. We have made clear that it is the State's burden, not the defendant's. *See id.*, 428 Md. at 721, 53 A.3d at 1183. We explained why this is so in *Taylor*, 352 Md. at 354, 722 A.2d at 72–73: "As the beneficiary of the error, the State has the burden of establishing that it was not prejudicial," and "[a] reversal of the . . . conviction is required unless the record demonstrates that the trial court's error in communicating with the jury ex parte did not prejudice the [defendant]." Nevertheless, the intermediate appellate court opined, applying the test enunciated in *Diaz*, "appellant would need to show how prejudice did or might have occurred."

The State's approach to the prejudice requirement is to establish that the trial court has the ultimate responsibility for determining whether and when to remove a juror and substitute an alternate for that juror. In so doing, it disregards the role or significance of the notification and opportunity for input into that decision that Rule 4–326(d) provides and requires. We have been clear, the right to notice and the opportunity to provide input have significance. In *Harris*, we emphasized that "the purpose of Rule 4–326(d) is to provide an opportunity for input in designing an appropriate response to each question in order to assure fairness and avoid error," 428 Md. at 720, 53 A.3d at 1182, quoting *Harris v. State*, 189 Md.App. 230, 247, 984 A.2d 314, 324 (2009), and concluded that the failure of notice necessarily deprives the defense of the opportunity to provide the input on how to proceed that the Rule contemplates. *Id. See Stewart*, 334 Md. at 229, 638 A.2d at 761. Accordingly, we hold that the State did not carry its burden to establish that the petitioner was not prejudiced by the Rule violation.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AND REMAND THE CASE TO THAT COURT FOR NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY BALTIMORE COUNTY.