*State of Maryland v. Kenneth Hart*, No. 74, September Term, 2015.  Opinion by Greene, J.

**CRIMINAL PROCEDURE — RIGHT TO BE PRESENT — WAIVER**

A defendant has a due process right to be present at every critical stage of his or her trial from the time the jury is impaneled until it reaches a verdict or is discharged.  This common law right is implemented by Maryland Rule 4-231.  Additionally, pursuant to Maryland Rule 4-326, a defendant has a right to be present, and to be heard, before a trial judge responds to any communication from an impaneled jury that "pertains to the action."  Ordinarily, communications between a trial judge and a jury, and a declaration of a mistrial are considered stages of trial at which a defendant has a right to be present.

When the court received a jury note indicating a deadlock, the note pertained to the action within the meaning of Rule 4-326, and Hart had a right to be present to discuss the court's response to the note.  The record indicates that Hart was involuntarily absent due to a medical emergency.  Where defense counsel, in the absence of his client, consented to a review of a jury note in the presence of the trial judge and the prosecutor, counsel waived the defendant's right to be present for a limited purpose.

Upon notification of Hart's absence, the court was required to take reasonable steps to assure the defendant's presence at all stages of the criminal trial before proceeding against the defendant *in absentia*.  Under the circumstances, after reviewing the contents of the jury note with the jury foreman, the prosecutor and defense counsel, it was unreasonable for the trial judge to refuse to continue the proceedings, at least, one day before exercising her discretion to proceed with trial in the defendant's absence.

The court also abused its discretion when it violated Hart's right to be present for the declaration of a mistrial based on perceived manifest necessity.  After jeopardy attaches, retrial is barred if a mistrial is declared without the defendant's consent unless there is a showing of "manifest necessity" to declare the mistrial.  In determining the existence of a hung jury, the trial judge may not disregard the manifest necessity analysis.  Here, the declaration was premature and manifest necessity did not exist, because the defendant was involuntarily absent, and the judge did not adopt any reasonable alternatives to the declaration.  Where a declaration of mistrial occurs in the absence of manifest necessity, and without the consent of the defendant, double jeopardy bars a retrial.

IN THE COURT OF APPEALS

OF MARYLAND

No. 74

September Term, 2015

_____

STATE OF MARYLAND

v.

KENNETH HART

_____

Barbera, C.J.
*Battaglia,
Greene,
Adkins,
McDonald,
Watts,
Hotten,

JJ.

_____

Opinion by Greene, J.

_____

Filed: August 19, 2016

*Battaglia, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the MD Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

In this case, we address a defendant's right to be present at trial as it pertains to communications with a jury foreperson during the deliberation phase of a trial as well as a trial court's declaration of a mistrial on the ground of manifest necessity. Kenneth Hart ("Hart"), the defendant, was present throughout the two-day trial. On the second day of trial, after closing arguments and the administration of jury instructions, jury deliberations began at 7 p.m. After approximately three and a half hours of deliberation, the trial court received a jury note. The judge informed the prosecutor and defense counsel of the communication, and made arrangements for the sheriffs to bring Hart, who was in custody, to the courtroom. While they were waiting for Hart to arrive, defense counsel requested a "preview" of the content of the jury note. The note indicated that the jury was deadlocked on a particular count and asked for guidance. Shortly thereafter, the judge was informed that Hart had been transported to a hospital due to a medical emergency. After the judge discussed the note with the prosecutor and defense counsel, the court summoned the jury foreperson to discuss the nature of the deadlock. Although Hart was not present, and despite objections from defense counsel, the judge accepted a partial verdict from the jury. Hart was found guilty on three counts. The trial court then declared a mistrial on the perceived deadlocked count on the basis of manifest necessity.

At a post-trial hearing, the trial court recognized its error in receiving the partial verdict in Hart's absence, and ordered a new trial for the counts on which Hart had been convicted. The trial judge concluded, however, that there was manifest necessity to declare a mistrial, and denied defense counsel's motion to dismiss the deadlocked count.

For the reasons explained below, we disagree with the entry of a mistrial on the perceived deadlocked count. We hold that the trial court erred when it responded to the jury note without first conducting an adequate inquiry into the voluntariness of Hart's absence from the court proceedings. Furthermore, the trial judge erred in prematurely declaring a mistrial—an extraordinary remedy—without first considering reasonable alternatives to the declaration, because Hart was involuntarily absent. These errors were not harmless, and resulted in prejudice to Hart. Because manifest necessity did not exist, under the unique facts of the case, a retrial on the particular count is barred on the grounds of double jeopardy.

## FACTUAL AND PROCEDURAL BACKGROUND

As a result of a traffic stop, Hart was found to be in possession of controlled dangerous substances, including heroin, cocaine, and phencyclidine ("PCP"). Hart was indicted on several counts, which resulted in a two-day jury trial. On May 19, 2014, the trial commenced in the Circuit Court for Montgomery County. After the State concluded its case-in-chief, Hart did not present any evidence, and rested his case. The trial court's instructions to the jury included the modified *Allen* charge on the jury's duty to deliberate.[1] Four charges were submitted to the jury: Count 1: possession of heroin with intent to

---

[1] "The term '*Allen* instruction' is a legal eponym derived from a United States Supreme Court opinion 'approv[ing] the use of an instruction in which the jury was specifically asked to conciliate their differences and reach a verdict.'" *Nash v. State*, 439 Md. 53, 90, 94 A.3d 23, 45, *cert. denied*, 135 S. Ct. 284, 190 L. Ed. 2d 209 (2014) (citing *Kelly v. State*, 270 Md. 139, 140 n.1, 310 A.2d 538, 539, n.1 (1973)). Here, the judge provided the jurors with Maryland Criminal Pattern Jury Instruction 2:01, which governs a jury's duty to deliberate.

distribute; Count 2: possession of heroin; Count 3: possession of cocaine; Count 4: possession of PCP. At approximately 7 p.m., the jury began deliberations; a deputy sheriff took Hart into custody and escorted him to a holding area.

At 10:21 p.m., the trial court received a written note from the jury. The judge summoned the prosecutor and defense counsel, and arranged for Hart to be brought to the courtroom. After a period of time, the court was still waiting for Hart's arrival. While the bailiff contacted the sheriffs to ascertain Hart's whereabouts, the following conversation ensued between the trial judge, prosecutor and defense counsel:

> THE COURT: Do you want your client present when I tell you about the note?
>
> [DEFENSE COUNSEL]: I would love a preview first. I'll waive him for the preview.
>
> THE COURT: You'll what?
>
> [DEFENSE COUNSEL]: I'll fill - - I'll fill him in.
>
> THE COURT: Okay, here's a copy.

The jury note stated: **"After thorough deliberation the jury split on charge #1. No new information can help us reach consensus. What should we do?"** Meanwhile, continued efforts were made to have the sheriffs escort Hart to the courtroom. At approximately 10:48 p.m., the judge was informed that Hart was absent due to a medical emergency:

> [DEFENSE COUNSEL]: I'm informed, your honor, or the court has just - - the courtroom has been informed at this late hour, 10:48 or so, that Mr. Hart is experiencing medical problems and is likely en route by ambulance to the hospital.
>
> THE COURT: Yes, we received a note from the jury at approximately 10:21[p.m.,] which reads, "After thorough deliberation the jury is split on

- 3 -

charge number one. No new information can help us reach consensus. What should we do?" While we were waiting for the sheriffs to bring the defendant and after repeated calls we just found out that there's a medical emergency. He's on his way to the hospital. What do you want to do about the note?

[DEFENSE COUNSEL]: This is certainly a situation of first impression for me. I have no information on his medical condition aside from a call from the sheriff's department saying he's en route with chest pains. Presumably he could be fine tomorrow morning. Maybe not. Maybe not at all. The jury has deliberated for nearly four hours, after two full days of trial. One of two things I would suggest at this point - - I mean, I don't have Mr. Hart by my side, which makes me apprehensive to make any moves on his behalf. But perhaps an inquiry as to how seriously they're deadlocked or - -

THE COURT: Do you want me to bring the foreperson out and ask the foreperson?

[DEFENSE COUNSEL]: I think that would at least give us some guidance, because my gut says ask them to come back in the morning and continue to deliberate, give them the *Allen* charge, find out what Mr. Hart's status is. I'd hate to - - I don't think I'm in a position to request a mistrial without him by my side and without his input.

THE COURT: Counsel?

[PROSECUTOR]: They haven't been asked to continue to deliberate yet. I'll defer to the court as to what we do.

THE COURT: Well, I'll bring the foreperson out and ask him whether or not - - if they can't come back tomorrow, you know, after having a good night's sleep, do they think that they can deliberate some more? Hi.

JUROR 132: Hi.

THE COURT: You can - - you can just stand right there. We received your note. And it indicates that no new information can help [the jury] reach consensus. But what I was wondering is - - I mean, it's been a long day. Do you think that after going home and maybe getting a good night's rest and coming back tomorrow you can start deliberating again with a clearer head, or do you think it's no use?

JUROR 132: We had a very good process in there. And there was (sic) a couple of times where we initially took a minute and everyone just thought

- 4 -

and thought.  We went around the room three times, we gave everyone a chance to talk, and then we all answered each other.  We voted three times going around.  And at the end, there was (sic) people in the room who said there was no information that could change their mind.  If you want to know, I can tell you what the vote count was.

THE COURT: No, not right now.  But when you say information, are you saying information that could be gained from you all discussing it with each other or information that we could give?

JUROR 132: I think either . . . . I think that there are people in the room who have unequivocal positions on each side.  And they said there's nothing that could change their mind.

THE COURT: Okay.  And you don't think a good night's sleep would help.

JUROR 132: No, I don't think so.

The judge then asked the prosecutor and defense counsel if they had any questions for the foreperson.  Each replied in the negative, and the foreperson returned to the jury room.  The following exchange then took place:

> **[DEFENSE COUNSEL]: I think the only thing that I am in a position to request at this moment is that they be excused for the night and read the *Allen* charge first thing in the morning, start deliberations again.**  If they pass a similar note suggesting that they're deadlocked, we can deal with it accordingly.  But they haven't been read the *Allen* charge.  And most importantly **I don't know what Mr. Hart's situation [is].  And without him to give me his input related to his desires, I would be I think delinquent in my duties if I requested a mistrial on his behalf.**
>
> [PROSECUTOR]: Your honor, I can just tell you from the State's perspective based on what I heard I don't think anything is going to change.  The people who are set on their positions are going to, after coming back, anything actually going to change materially to make the posture change (sic) - - so the State is not interested in that.  But I'll defer to - - in terms of coming back and letting them get the *Allen* charge and continue to deliberate, in light of what I heard.  But I'll defer as to what ends up happening.
>
> THE COURT: Okay.  With respect to what you're referring to, the *Allen* charge, basically that's already been given in the jury instruction - - [a] jury's

duty to deliberate. They've already got this. The foreperson came out. He indicated that, you know, they've taken breaks, they've gone over it, in response to my question, because the note wasn't clear where it says no new information could help. And the response to my question was whether he was talking about information from us or information from the deliberations, and he said both. So based on his responses to my questions I'm not going to ask them to deliberate any further. I'm reluctant right now to say a mistrial as to charge number one, because I don't know what the verdict sheet says[2] . . . . But I don't see that there's anything that would prohibit me from declaring a mistrial after we see the verdict sheet, do you?

[DEFENSE COUNSEL]: I mean, I've stated my position. I think that they should be charged - -

THE COURT: No, I understand that. But I'm just asking you at this point.

[PROSECUTOR]: Your honor, I think we should look at the verdict sheet.

**[DEFENSE COUNSEL]: Mr. Hart is not even in the building.**

**THE COURT: I understand that, but that's through no fault of the court. And we don't know what his circumstances are.**

[DEFENSE COUNSEL]: I agree with that, but I don't want to - - I mean, there's only a couple of options. He's either legitimately experiencing medical issues, which I think in light of him proceeding through this whole trial - - and seemingly the stresses would at some point manifest and come to a head, and that would be appropriate with the timing associated with this, or he's faking it which, you know, I don't put any stock in whatsoever. But I don't think he should be punished by virtue of the fact that he's fallen ill.

THE COURT: I don't see this as punishment. What do you see as punishment for it? I don't understand what you're - -

[DEFENSE COUNSEL]: Taking a partial verdict in his absence, not allowing him to consult with me about the issue of mistrial. Now I've stated my position. And that may or may not be his position, but we don't know his position.

---

[2] The colloquy focused exclusively on Count 1. Therefore, at that time, it was unclear to the judge whether the jury had already rendered a unanimous vote on the remaining counts.

THE COURT: So are you suggesting that this could be open-ended? We've got a verdict on at least some of the counts, and I'm inclined to accept that and then based on the verdict sheet declare a mistrial on one and two or just - - I don't know what it says. So let's bring the jury in.

The court summoned the jury and received a partial verdict. The jury announced it was unable to reach a verdict as to Count 1; however, Hart was found guilty on the remaining possession counts. The jury was then hearkened, polled, and dismissed. Thereafter, the judge declared a mistrial as to Count 1, the perceived deadlocked count.

Nearly three months after the jury returned a partial verdict, on August 18, 2014, Hart filed, through counsel, a Motion to Dismiss Enumerated Counts and Motion for New Trial. He moved to dismiss Count 1 on the grounds of double jeopardy. He argued that the mistrial was not supported by manifest necessity because either the jury was not truly deadlocked, or Hart was involuntarily absent; without manifest necessity, a retrial is barred. At a hearing, on August 22, 2014, the trial judge affirmed her finding of manifest necessity based on the jury deadlock, and denied the motion to dismiss Count 1. The Court did, however, recognize its error in accepting the partial verdict in Hart's absence, and granted a new trial for the three counts on which Hart had been convicted.

On August 26, 2014, Hart noted an interlocutory appeal to the Court of Special Appeals seeking review of the trial court's decision to deny Hart's motion to dismiss Count 1. Two days later, the trial court granted a stay of trial pending appellate review.

On August 12, 2015, in an unreported opinion, the Court of Special Appeals reversed the trial court's denial of the motion to dismiss Count 1. It held, under Maryland Rule 4-231, that Hart had a right to be present at the declaration of the mistrial on Count 1;

Hart neither waived his right to be present nor consented to the declaration of the mistrial, and none of the exceptions under Rule 4-231(b) existed. The intermediate appellate court determined that due to Hart's involuntary absence, manifest necessity did not exist to declare a mistrial, and therefore, double jeopardy barred retrial.

The State filed a petition for writ of certiorari with this Court. We granted *certiorari* to answer the following questions, which we have rephrased:[3]

1. Did Defendant have a right to be present at the colloquy with the jury foreperson, and, if so, was that right waived by defense counsel?

2. Did Defendant have a right to be present at the declaration of the mistrial? If so, was it harmless error for the court to declare a mistrial when Defendant was involuntarily absent?

3. Assuming that the trial court committed reversible error in declaring a mistrial as to Count 1, is the appropriate remedy dismissal or retrial?

*State v. Hart*, 445 Md. 487, 128 A.3d 51 (2015). For the reasons stated below, we shall hold that Hart had a right to be present at the colloquy with the jury foreperson. Defense

---

[3] The original questions presented are:
1. Did the Court of Special Appeals err in holding that the trial court violated Maryland Rule 4-231 by discussing a jury note with the foreperson in Hart's absence where defense counsel waived Hart's presence in order to view the note, and also suggested that the trial court question the foreperson about the note in Hart's absence?
2. Where a mistrial as to one count was manifestly necessary due to jury deadlock, did Hart, who was unavailable, not have a right to be present for the trial court's declaration of a mistrial as to that count, and if Hart did have a right to be present, was the error in declaring a mistrial in his absence harmless?
3. Assuming that the trial court committed reversible error in declaring a mistrial as to a deadlocked count in Hart's absence, did the Court of Special Appeals err in holding that dismissal of a deadlocked count, rather than retrial, was the appropriate remedy?

counsel, however, in his client's absence, consented to a limited discussion between the court, the prosecutor, defense counsel and the jury foreperson concerning the content of the jury note. Defense counsel did not waive Hart's right to be present for any other stage of the trial, and defense counsel's limited consent to an inquiry regarding the jury deadlock cannot be deemed a waiver of Hart's right to be present for the trial court's ultimate response to the jury note. Accordingly, the trial judge erred in declaring a mistrial in Hart's involuntary absence without first continuing the case. The declaration was premature and manifest necessity did not exist, because the defendant was involuntarily absent, and the judge did not adopt any reasonable alternatives to the declaration. In the absence of manifest necessity, double jeopardy bars a retrial of Count 1. Therefore, we affirm the judgment of the Court of Special Appeals.

## STANDARD OF REVIEW

When a violation of a criminal defendant's right to be present is at issue, we apply the harmless error analysis.

> [T]he harmless error principle is fully applicable to a defendant's right to be present during a stage of the trial. Prejudice will not be conclusively presumed. If the record demonstrates beyond a reasonable doubt that the denial of the right could not have prejudiced the defendant, the error will not result in a reversal of his conviction.

*Noble v. State*, 293 Md. 549, 568–69, 446 A.2d 844, 854 (1982). *See Perez v. State*, 420 Md. 57, 65, 21 A.3d 1048, 1053 (2011) ("Md. Rule 4-326 protects an important right, and therefore we employ the harmless error analysis when reviewing violations of the rule.") (citation omitted). In *Dorsey v. State*, we described harmless error:

We conclude that when an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed 'harmless' and a reversal is mandated. Such reviewing court must thus be satisfied that there is no reasonable possibility that the evidence complained of—whether erroneously admitted or excluded—may have contributed to the rendition of the guilty verdict.

276 Md. 638, 659, 350 A.2d 665, 678 (1976) (footnote omitted).

"Once error is established, the burden is on the State to show that it was harmless beyond a reasonable doubt. The record must affirmatively show that the communication (or response or lack of response) was not prejudicial." *Denicolis v. State*, 378 Md. 646, 658–59, 837 A.2d 944, 952 (2003) (citing *Noble*, 293 Md. at 563, 446 A.2d at 850–51); s*ee also State v. Yancey*, 442 Md. 616, 628, 113 A.3d 685, 692 (2015) ("We have steadfastly maintained, however, that the State has the burden to prove harmlessness."). "The harmless error standard is highly favorable to the defendant . . . ." *Perez,* 420 Md. at 66, 21 A.3d at 1054 (quoting *Dove v. State*, 415 Md. 727, 743, 4 A.3d 976, 985 (2010)). "[A]n ambiguous record cannot support a harmless error argument, and if an ambiguous record is insufficient, so, surely, is a silent record." *Denicolis*, 378 Md. at 659, 446 A.2d at 851 (citing *Taylor v. State*, 352 Md. 338, 351, 722 A.2d 64, 71 (1998)).

Ordinarily, the decision whether to grant a mistrial is reviewed under the abuse of discretion standard. We explained in *Simmons v. State*:

[O]ur cases make clear that we apply the abuse of discretion standard of review in cases of mistrial. "It is well-settled that a decision to grant a mistrial lies within the sound discretion of the trial judge and that the trial judge's determination will not be disturbed on appeal unless there is abuse of discretion." *Carter v. State*, 366 Md. 574, 589, 785 A.2d 348, 356 (2001)

. . . . Reading [*State v. Fennell*, 431 Md. 500, 66 A.3d 630 (2013)], along with both United States Supreme Court precedent and our own prior case law demonstrates that although a reviewing court should not simply "rubber stamp" a trial judge's ruling of a mistrial, the trial judge is "far more 'conversant with the factors relevant to the determination' than any reviewing court can possibly be" and, therefore, we review the trial judge's grant of a mistrial for abuse of discretion . . . That is, we look to whether the trial judge's exercise of discretion was "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Stabb v. State,* 423 Md. 454, 465, 31 A.3d 922, 928 (2011) (citations and quotations omitted); *Wilson v. John Crane, Inc.*, 385 Md. 185, 198, 867 A.2d 1077, 1084 (2005) ("There is an abuse of discretion where no reasonable person would take the view adopted by the trial court . . . or when the court acts without reference to any guiding rules or principles . . . . or when the ruling is violative of fact and logic.")[.]

436 Md. 202, 212–13, 81 A.3d 383, 389 (2013) (internal citations omitted). We apply the

*de novo* standard, however, when there is an issue as to whether a trial court properly

interpreted and applied the Maryland Rules when declaring a mistrial *sua sponte*:

[E]ven with respect to a discretionary matter, a trial court must exercise its discretion in accordance with correct legal standards. Therefore, . . . where an order involves an interpretation and application of Maryland constitutional, statutory or case law, our Court must determine whether the trial court's conclusions are "legally correct" under a *de novo* standard of review.

*Schisler v. State*, 394 Md. 519, 535, 907 A.2d 175, 184 (2006) (internal citations and

quotation marks omitted).

**DISCUSSION**

In Maryland, a criminal defendant has a common law right to be present at all critical

stages of the trial. *See Grade v. State*, 431 Md. 85, 95, 64 A.3d 197, 202 (2013); *Pinkney*

*v. State*, 350 Md. 201, 209, 711 A.2d 205, 209 (1998); *Stewart v. State*, 334 Md. 213, 224,

638 A.2d 754, 759 (1994). This right is implemented by Maryland Rule 4-231, which

states: "A defendant shall be present at all times when required by the court." We have

explained the importance of this right:

> This Court consistently has recognized that "an accused in a criminal prosecution for a felony has the absolute right to be present at every stage of his trial from the time the jury is impaneled until it reaches a verdict or is discharged, and there can be no valid trial or judgment unless he has been afforded that right." This well settled constitutional and common law right, as we have often recognized, is guaranteed by Article 5 of the Maryland Declaration of Rights, and, in some measure, by the Fourteenth Amendment to the United States Constitution. It is also preserved by Maryland Rule 4-231.

*State v. Harris*, 428 Md. 700, 712–13, 53 A.3d 1171, 1178 (2012) (citations and footnotes

omitted). "The constitutional right of a defendant to be present at trial is rooted largely in

the right to confront witnesses and is also protected in some situations by the Due Process

Clause where the right of confrontation is not implicated." *Pinkney*, 350 Md. at 209, 711

A.2d at 209 (citations omitted). This right "vindicates two primary interests: enabling the

defendant to assist in the presentation of a defense, and ensuring the appearance of fairness

in the execution of justice." *Id.* (citing *State v. Hudson*, 574 A.2d 434, 438 (N.J. 1990)).

A criminal defendant's right to be present at all stages of trial is not absolute, and

includes limitations. Md. Rule 4-231(b). For example, a defendant's presence is not

required "at a conference or argument on a question of law [.]" *Id.* Furthermore, this right

is subject to waiver. Previously, in Maryland, this common law right could only be waived

"by the defendant himself and be done expressly." *Williams v. State*, 292 Md. 201, 216,

438 A.2d 1301, 1308 (1981); *see also Midgett v. State*, 216 Md. 26, 37, 139 A.2d 209, 214–

15 (1958) ("[T]he right to be present is personal to the accused and cannot be waived by

his counsel."). In *Williams*, this Court modified the common law right to permit, under

- 12 -

certain circumstances, waiver by counsel in light of modern developments.[4] 292 Md. at

218–19, 438 A.2d at 1309–10. The *Williams* Court explained:

> Today, with the complexity of many criminal trials and the absolute right of counsel if there is a danger of incarceration, our system proceeds upon the assumption that it is primarily counsel's function to assert or waive most "rights" of the defendant . . . With respect to all criminal trials, or parts of trials, taking place after the issuance of our mandate in this case, an effective waiver of the defendant's right to be present at every stage of the trial will not always require a personal waiver by the defendant. Where the right of confrontation is not implicated, and where there is involved no other right requiring intelligent and knowing action by the defendant himself for an effective waiver, a defendant will ordinarily be bound by the action or inaction of his attorney . . . [I]f the defendant himself does not affirmatively ask to be present at such occurrences or does not express an objection at the time, and if his attorney consents to his absence or says nothing regarding the matter, the right to be present will be deemed to have been waived.

292 Md. at 218, 438 A.2d at 1309–10. Pursuant to Rule 4-231(c), waiver of a defendant's

right to be present at a critical stage of trial may occur under the following conditions:

> The right to be present . . . is waived by a defendant:
>
> (1) who is voluntarily absent after the proceeding has commenced, whether or not informed by the court of the right to remain; or
> (2) who engages in conduct that justifies exclusion from the courtroom; or
> (3) who, personally or through counsel, agrees to or acquiesces in being absent.

---

[4] Under common law, the right to be present could not be waived by counsel's action or inaction, because "[w]hen many of our earlier cases involving waiver of the right to be present were decided, there was no right to counsel, including state-furnished counsel to indigents, in many criminal cases presenting the possibility of incarceration." *Williams*, 292 Md. at 217, 438 A.2d at 1309.

Additionally, as explained in the Committee note to Rule 4-231, "[e]xcept when specifically covered by this Rule, the matter of presence of the defendant during any stage of the proceedings is left to case law and the Rule is not intended to exhaust all situations."

In the case *sub judice*, the first issue presented is whether Hart had a right to be present at the colloquy with the jury foreperson, and, if so, whether that right was waived. The State argues that the Court of Special Appeals erred in addressing this issue, because it was not preserved for appellate review. Maryland Rule 8-131(a) defines the scope of appellate review, and states, in pertinent part:

> Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.

The issue before the Court of Special Appeals was the propriety of the trial court's denial of Hart's motion to dismiss Count 1 on the grounds of double jeopardy. In its unreported opinion, the intermediate appellate court stated:

> We hold that Hart had a right to be present when the trial court declared a mistrial on Count 1, and the declaration of a mistrial in his absence was in error. Because the entry of a mistrial in Hart's absence was erroneous in the first place, there could be no manifest necessity for declaration of the mistrial. As a result, retrial on that charge is barred by double jeopardy.

As part of its analysis, the intermediate appellate court necessarily had to explore the circumstances surrounding the trial judge's decision to declare a mistrial. It determined that "[d]ue to the factual nature of the inquiries surrounding the trial court's decision to declare a mistrial," the declaration of a mistrial was not purely legal in nature. Finding no evidence of waiver or an applicable exception to the right to be present, under Rule

- 14 -

4-231(b)(1),[5] the intermediate appellate court held that Hart's right to be present had been violated twice by the trial court—at the colloquy and at the declaration of the mistrial—when the judge proceeded in Hart's involuntary absence. To the extent that the issue regarding the propriety of the colloquy may have been unpreserved for appellate review, we hold that the Court of Special Appeals properly exercised its discretion to consider it. The colloquy was sufficiently interrelated with the issue concerning the declaration of the mistrial in Hart's absence. *See Unger v. State*, 427 Md. 383, 407–08, 48 A.3d 242, 256 (2012) ("It is a settled principle of Maryland procedure that, for purposes of preservation in various contexts, where the issue raised by a litigant is sufficiently interrelated with another issue not raised, the court will treat them as if both issues were raised by the litigant."); *Stewart*, 334 Md. at 222, 638 A.2d at 758 ("The word 'ordinarily' [in Rule 8-131(a)] gives us discretion to consider issues not raised or decided below.").

**Right to be Present at the Colloquy**

The right to be present "extends to any communication between the trial judge and the jury." *Grade*, 431 Md. at 95, 64 A.3d at 202 (citations omitted). "[C]ommunications between the trial judge and the jury relating to the jury's verdict are generally considered stages of the trial when the defendant has a right to be present." *Bunch v. State*, 281 Md. 680, 685, 381 A.2d 1142, 1144 (1978). We have explained:

> This Court consistently has recognized that an accused in a criminal prosecution for a felony has the absolute right to be present at every stage of

---

[5] "A defendant is entitled to be physically present in person at a preliminary hearing and every stage of the trial, except (1) at a conference or argument on a question of law; (2) when a *nolle prosequi* or stet is entered pursuant to Rules 4-247 and 4-248." Md. Rule 4-231(b).

his trial from the time the jury is impaneled until it reaches a verdict or is discharged, and there can be no valid trial or judgment unless he has been afforded that right . . . It is, moreover, well settled that any communications between a judge and the jury which pertain to the action constitute just such stages of trial at which the defendant is entitled to be present. Indeed, the Supreme Court of the United States, too, has recognized that it is important, "especially in a criminal case," for the defendant "to be present from the time the jury is impaneled until its discharge after rendering the verdict." *Shields v. United States*, 273 U.S. 583, 589, 47 S. Ct. 478, 479, 71 L. Ed. 787, 790 (1927). Therefore, and in that regard, the Supreme Court has cautioned against a court receiving "a communication from the jury and answer[ing] it, without giving the defendant and his counsel an opportunity to be present in court to take such action as they might be advised . . . ." *Id.*, 273 U.S. at 587, 47 S. Ct. at 479, 71 L. Ed. at 789.

*Harris*, 428 Md. at 712–14, 53 A.3d at 1178–79 (internal quotation marks and citations omitted).

These principles are codified by Maryland Rule 4-326, which governs communications between the court and jury. *See Perez*, 420 Md. at 63, 21 A.3d at 1052 ("Md. Rule 4–326(d) provides explicit guidance to a trial court in dealing with communications from the jury."). In pertinent part, Rule 4-326 states:

(A) A court official or employee who receives any written or oral communication from the jury or a juror shall immediately notify the presiding judge of the communication.
(B) **The judge shall determine whether the communication pertains to the action.** If the judge determines that the communication does not pertain to the action, the judge may respond as he or she deems appropriate.
**Committee note: Whether a communication pertains to the action is defined by case law.** See, for example, *Harris v. State*, 428 Md. 700 (2012) and *Grade v. State*, 431 Md. 85 (2013).
(C) **If the judge determines that the communication pertains to the action, the judge shall promptly, and before responding to the communication, direct that the parties be notified of the communication and invite and consider, on the record, the parties' position on any response.** The judge may respond to the communication in writing or orally in open court on the record.

Md. Rule 4-326(d)(2) (emphasis added). The "very spirit" of Rule 4-236 "is to provide an opportunity for input in designing an appropriate response to each question in order to assure fairness and avoid error." *Perez*, 420 Md. at 64–65, 21 A.3d at 1053 (quoting *Smith v. State*, 66 Md. App. 603, 624, 505 A.2d 564, 574 (1986) *cert. denied*, 306 Md. 371, 509 A.2d 134 (1986)).

In the instant case, upon receiving the jury note, the judge's first responsibility, pursuant to Rule 4-326, was to ascertain whether the communication "pertained to the action." We have steadfastly maintained:

> [A]n accused in a criminal prosecution has the absolute right to be present at every stage of trial from the time the jury is impaneled until it reaches a verdict or is discharged, and that includes the right to be present when there shall be any communication whatsoever between the court and the jury[,] *unless* the record affirmatively shows that such communications were not prejudicial or had no tendency to influence the verdict of the jury. We have often confirmed that fundamental principle . . . [T]his right is absolute and . . . a judgment of conviction ordinarily cannot be upheld if the record discloses a violation of the right. The kinds of communication that may be regarded as non-prejudicial . . . are those that clearly do not pertain to the action or to a juror's qualification to continue serving and that are of a purely personal nature.

*Denicolis*, 378 Md. at 656–57, 837 A.2d at 950 (2003) (internal quotation marks and citations omitted). In the case *sub judice*, the jury note indicated a deadlock on Count 1, and requested guidance from the court.[6] The colloquy, which was prompted by the receipt of this note, directly related to the jury's ability to reach a verdict, and thus, it "pertained to the action" within the meaning of Rule 4-236. *See Harris*, 428 Md. at 715–16, 53 A.3d

---

[6] The jury note stated: "After thorough deliberation the jury split on charge #1. No new information can help us reach consensus. What should we do?"

at 1180 (concluding that communications raising issues that "implicate and concern the juror's ability to continue deliberating" pertain to the action); *Bunch*, 281 Md. at 685, 381 A.2d at 1144 ("[C]ommunications between the trial judge and the jury relating to the jury's verdict are generally considered stages of the trial when the defendant has a right to be present.").

In accordance with Rule 4-326,[7] at approximately 10:21 p.m., the trial judge notified the prosecutor and defense attorney of the jury note, and attempted to secure Hart's presence. Defense counsel previewed the contents of the note, and, at 10:48 p.m., the trial judge stated on the record: "While we were waiting for the sheriffs to bring the defendant and after repeated calls we just found out that there's a medical emergency." Without further inquiry into the voluntariness of Hart's absence, the judge turned to defense counsel, and stated: "He's on his way to the hospital. What do you want to do about the note?" Defense counsel expressed apprehension about proceeding without his client. Notwithstanding the reluctance, it was his suggestion to discuss the nature of the deadlock with the jury for the purpose of gathering information in order to formulate a proper response to the jury note, but reiterated that his ability to represent his client—by suggesting a proper response—was limited due to Hart's absence:

> [DEFENSE COUNSEL]: I think that [the colloquy] would at least give us some guidance, because my gut says ask them to come back in the morning and continue to deliberate, give them the *Allen* charge, find out what Mr.

---

[7] "If the judge determines that the communication pertains to the action, the judge shall promptly, and before responding to the communication, direct that the parties be notified of the communication and invite and consider, on the record, the parties' position on any response. The judge may respond to the communication in writing or orally in open court on the record." Md. Rule 4-326(d)(2)(C).

- 18 -

Hart's status is. I'd hate to - - I don't think I'm in a position to request a mistrial without him by my side and without his input.

We agree with the Court of Special Appeals that the colloquy with the jury foreperson was a "stage of the trial" at which Hart had a right to be present. We disagree, however, that Hart's right to be present for the colloquy was violated. Rule 4-231(c)(3) provides that the right to be present under subsection (a) is waived by a defendant who, "personally or through counsel, agrees to or acquiesces in being absent." Here, defense counsel consented to Hart's absence from the colloquy for the limited purpose of obtaining information with regard to the extent of the jury's deadlock. The colloquy was factual in nature, and designed to explore the extent of the deadlock on Count 1.

Clearly, defense counsel understood his limitations in proceeding without his client's presence; thus, he requested that the scope of the inquiry with the foreperson be limited to exploring the nature of the impasse. *See Williams*, 292 Md. at 219, 438 A.2d at 1310 ("Where the right of confrontation is not implicated, and where there is involved no other right requiring intelligent and knowing action by the defendant himself for an effective waiver, a defendant will *ordinarily* be bound by the action or inaction of his attorney.") (emphasis added). Hart was absent from the proceedings, and it is evident from the record that defense counsel did not have an opportunity to consult with Hart regarding the content of the jury note. Defense counsel stated explicitly that his ability to suggest an appropriate response to the jury note, and represent his client's interest, was hindered due to Hart's absence. He informed the trial judge: "I don't have Mr. Hart by my side, which makes me apprehensive to make any moves on his behalf. But perhaps an

- 19 -

inquiry as to how seriously they're deadlocked[.]" Accordingly, defense counsel seized

the opportunity to gather information about the jury note, and put himself in a position to

confer with his client at a later time about the content of the note. Defense counsel did not

request or consent, in his client's absence, to the trial court's answer to the jury

communication, which was to deny a continuance, refuse to give an additional *Allen* charge

after receiving notice of the impasse, accept a partial verdict, declare a mistrial on Count

1, and discharge the jury. Immediately following the colloquy, defense counsel made clear

the scope of the waiver:

> [DEFENSE COUNSEL]: I think the only thing that I am in a position to request at this moment is that they be excused for the night and read the *Allen* charge first thing in the morning, start deliberations again. If they pass a similar note suggesting that they're deadlocked, we can deal with it accordingly. But they haven't been read the *Allen* charge. And most importantly I don't know what Mr. Hart's situation [is]. And without him to give me his input related to his desires, I would be I think delinquent in my duties if I requested a mistrial on his behalf.

Defense counsel objected to any further proceedings in Hart's involuntary absence,

including the taking of a partial verdict and the declaration of a mistrial on Count 1.

In the past, "we [have] warned courts against too hastily trying an absent criminal

defendant, thus affecting 'a waiver of rights that are to be carefully safeguarded.'" *Pinkney*,

350 Md. at 211, 711 A.2d at 210 (quoting *Barnett v. State*, 307 Md. 194, 213, 512 A.2d

1071, 1081 (1986)). "Trial *in absentia* is not favored." *Pinkney*, 350 Md. at 218, 711 A.2d

at 214. The trial court abused its discretion, because the judge proceeded *in absentia* too

hastily: the facts on the record suggest that Hart was involuntarily absent, and the judge

did not inquire as to the seriousness of the Hart's condition or the expected length of his

absence prior to exercising her discretion to proceed without him. *See Pinkney*, 350 Md. at 223, 711 A.2d at 216 (holding that the trial court erred in proceeding *in absentia*, because if it had conducted an adequate inquiry into the defendant's whereabouts, it would have determined that the defendant was involuntarily absent due to a seizure he had recently sustained); *Stone v. State*, 344 Md. 97, 106, 685 A.2d 441, 445 (1996) ("[T]he right to be present at a trial *de novo* cannot be considered waived by non-appearance, that is, withdrawn, when the trial court has information that the appellant's failure to appear was neither wilful nor voluntary."). "The discretion of the trial court to try an absent defendant should be exercised after a review of all the appropriate concerns and with the recognition that the public interest and confidence in judicial proceedings is best served by the presence of the defendant at trial." *Pinkney*, 350 Md. at 218, 711 A.2d at 214.

The judge invalidated the trial by responding to the jury note in Hart's absence. *See Harris*, 428 Md. at 712, 53 A.3d at 1178 (stating that a defendant has a right to be present for a stage of trial, "and there can be no valid trial or judgment unless he has been afforded that right"). Additionally, the judge's comment to defense counsel's objection to responding to the jury note by receiving a partial verdict suggests that Hart's involuntary absence was insignificant to the trial judge or that Hart was somehow at fault for his absence despite evidence to the contrary:

> [DEFENSE COUNSEL]: Mr. Hart is not even in the building.
>
> THE COURT: I understand that, but that's through no fault of the court. And we don't know what his circumstances are.
>
> [DEFENSE COUNSEL]: I agree with that, but I don't want to - - I mean, there's only a couple of options. He's either legitimately experiencing

- 21 -

medical issues, which I think in light of him proceeding through this whole trial - - and seemingly the stresses would at some point manifest and come to a head, and that would be appropriate with the timing associated with this, or he's faking it which, you know, I don't put any stock in whatsoever. But I don't think he should be punished by virtue of the fact that he's fallen ill.

We hold that the court's violation of Hart's right to be present after the colloquy with the jury foreperson had ended was not harmless error. Hart was denied this opportunity to participate or to be informed in a timely manner about how the trial court intended to proceed following the colloquy. By going beyond the information gathering requested by defense counsel and answering the jury's communication, in the defendant's absence and without the opportunity for his input, Hart's right to be present at every stage of the trial was violated. *See Harris*, 428 Md. at 712–13, 53 A.3d at 1178–79. As a result, the colloquy culminated in the trial court's determination to deny a continuance, decline to give an additional *Allen* charge, declare a mistrial *sua sponte* as to Count 1, and discharge the jury, during the absence of the one person "most vitally concerned with the trial" and its outcome. *Harris*, 428 Md. at 716, 53 A.3d at 1180 (citing *Graham v. State*, 325 Md. 398, 415, 601 A.2d 131, 139 (1992)).

The trial court's error was prejudicial.[8] By failing to conduct an adequate inquiry, and then proceeding with the case after the completion of the colloquy, the trial judge

---

[8] In *Maupin v. Wyoming*, the Supreme Court of Wyoming held that the trial court's decision to proceed *in absentia* violated the defendant's right to be present, and the error was prejudicial. 694 P.2d 720, 724 (Wyo. 1985). The defendant had been present throughout trial, but prior to closing arguments, the defendant had a heart attack and was hospitalized. *Maupin*, 694 P.2d at 723. The court proceeded *in absentia*, and during deliberations, the trial judge responded to a jury note pertaining to the action. *Maupin*, 694 P.2d at 721–22. Wyoming's highest appellate court stated:

denied Hart the opportunity to observe the members of the jury (or to be seen by them) at a critical stage of the proceedings, consult with defense counsel, provide input, or express his position. We are unable to say that seeing defense counsel alone at the trial table had no influence on the verdict of the jury. *See Denicolis*, 378 Md. at 656, 837 A.2d at 950 (stating communications between the court and jury in a defendant's absence are considered prejudicial "*unless* the record affirmatively shows that such communications were not prejudicial or had no tendency to influence the verdict of the jury") (emphasis in original); *Dorsey*, 276 Md. at 659, 350 A.2d at 678 ("[U]nless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed 'harmless' and a reversal is mandated.").

---

We are unable to say in this case that the error was harmless beyond a reasonable doubt. Appellant was not present to assist and consult with his attorney when instructions on the law were submitted and during closing arguments. During deliberations, the jury inquired of the court concerning the applicability of self-defense. Appellant was not able to consult or advise with his attorney concerning the appropriate means for responding to the jury's inquiry. He was deprived of his right to be present at the trial and to be involved in the decisions being made. "The right to be present at trial stems in part from the fact that by his physical presence the defendant can hear and see the proceedings, can be seen by the jury, and can participate in the presentation of his rights [ . . . ] The defendant's right to be present at all proceedings of the tribunal which may take his life or liberty is designed to safeguard the public's interest in a fair and orderly judicial system. The presence of counsel alone at trial can never be harmless *per se*."

*Maupin*, 694 P.2d at 723 (quoting *Bustamante v. Eyman*, 456 F.2d 269, 274–75 (9th Cir. 1972)).

**Right to be Present at the Declaration of a Mistrial**

We now address the issue of whether Hart had a right to be present at the declaration of a mistrial. "The grant of a mistrial is considered an extraordinary remedy and should be granted only if necessary to serve the ends of justice." *Klauenberg v. State*, 355 Md. 528, 555, 735 A.2d 1061, 1075 (1999). "While it is in the sound discretion of the trial judge to declare a mistrial, he or she may do so only if a 'high degree' of necessity demands that he or she do so . . . This is so in order to ensure fairness to the defendant[.]" *Mansfield v. State*, 422 Md. 269, 287, 29 A.3d 569, 579–80 (2011) (internal citations omitted). "[T]he United States Supreme Court has declined to create a rigid test for determining manifest necessity. Instead, that determination is left to the sound discretion of the trial judge[.]" *Simmons*, 436 Md. at 214, 81 A.3d at 390 (citations omitted).

"The question of whether manifest necessity exists for the purposes of double jeopardy in the case of a mistrial depends on the unique facts and circumstances of the case." *Id.*; *see also Hubbard v. State*, 395 Md. 73, 90, 909 A.2d 270, 280 (2006). We have stated:

> The decision to declare a mistrial is an exercise of the trial judge's discretion and is entitled to great deference by a reviewing court. *Renico v. Lett*, 559 U.S. 766, [773–74,] 130 S. Ct. 1855, 1863, 176 L. Ed. 2d 678, 687 (2010); [*Arizona v. Washington*, 434 U.S. 497, 510, 98 S. Ct. 824, 832, 54 L. Ed. 2d 717, 731 (1978)]. A genuinely deadlocked jury is considered the prototypical example of a manifest necessity for a mistrial. *Blueford v. Arkansas*, ⸺ U.S. ⸺, ⸺, 132 S. Ct. 2044, 2052, 182 L. Ed. 2d 937, 945 (2012); *State v. Crutchfield*, 318 Md. 200, 209, 567 A.2d 449, 453 (1989). The term "genuinely deadlocked" suggests, however, "more than an impasse; it invokes a moment where, if deliberations were to continue, 'there exists a significant risk that a verdict may result from pressures inherent in the situation rather than the considered judgment of all the jurors.'" *United*

*States v. Razmilovic*, 507 F.3d 130, 137 (2d Cir. 2007) (quoting *Washington*, 434 U.S. at 509, 98 S. Ct. at 832, 54 L. Ed. 2d at 730).

*Fennell*, 431 Md. at 516–17, 66 A.3d at 640. "[I]n order to determine manifest necessity to declare a mistrial, the trial judge must weigh the unique facts and circumstances of each case, explore reasonable alternatives, and determine that no reasonable alternative exists." *Quinones v. State*, 215 Md. App. 1, 17, 79 A.3d 381, 390 (2013) (citing *Hubbard*, 395 Md. at 92, 909 A.2d at 281). "Thus, after jeopardy attaches, retrial is barred if a mistrial is declared without the defendant's consent unless there is a showing of 'manifest necessity' to declare the mistrial." *State v. Woodson*, 338 Md. 322, 329, 658 A.2d 272, 276 (1995). "[R]etrial is barred by the Fifth Amendment where reasonable alternatives to a mistrial, such as a continuance, are feasible and could cure the problem[.]" *Cornish v. State*, 272 Md. 312, 320, 322 A.2d 880, 886 (1974). The manifest necessity analysis is applicable in cases involving a jury deadlock:

> Although the Supreme Court refuses to require trial courts to jump over specified hurdles in mechanical fashion prior to declaring a mistrial, its preference for the exercise of judicial discretion does not obviate the manifest necessity analysis. *See* [*Illinois v. Somerville*, 410 U.S. 458, 462, 93 S. Ct. 1066, 1069, 35 L. Ed. 2d 425, 430 (1973)] (noting that mistrial by manifest necessity is appropriate where "the ends of substantial justice cannot be attained without discontinuing the trial" (quoting *Gori v. United States*, 367 U.S. 364, 368, 81 S. Ct. 1523, 1526, 6 L. Ed. 2d 901, 904 (1961))). **The trial court must determine still that no reasonable alternative to a mistrial exists. In the context of a hung jury, therefore, the trial court must determine ordinarily that genuine jury deadlock exists, such that further deliberations are unlikely to be productive.** *See Washington*, 434 U.S. at 509, 98 S. Ct. at 832, 54 L. Ed. 2d at 730 (permitting retrial where the court discharges a "genuinely deadlocked jury"). This view is entirely consistent with the Supreme Court's decision in *Blueford*. The Court did not determine, in that case, that the manifest necessity standard is reached automatically whenever the judge determines that deadlock exists, without further inquiry. Rather, in *Blueford*, the Court reasoned that no further inquiry was needed to

establish genuine deadlock after the jury indicated that it was deadlocked hopelessly and unlikely to reach a verdict.

*Fennell*, 431 Md. at 519–20, 66 A.3d at 642 (emphasis added). *Cornish*, 272 Md. at 318, 322 A.2d at 884 ("Ordinarily a retrial is permitted where the mistrial was caused by the jury's inability to reach a verdict[.]").

We hold that manifest necessity did not exist, and the trial judge abused her discretion in declaring a mistrial in Hart's involuntary absence. The unique facts and circumstances of this case are that the jury had only been deliberating approximately three and a half hours; the written note was given to the trial judge late in the evening, at 10:21 p.m.; Hart was involuntarily absent and whether or when he would return to the trial court was unknown; and absent was a good reason why the jurors could not have returned after a short continuance for further proceedings. Given these circumstances, the trial judge acted prematurely in determining that manifest necessity existed.

Prior to the declaration of a mistrial, the trial court was obliged to explore reasonable alternatives. "[R]etrial is barred by the Fifth Amendment where reasonable alternatives to a mistrial, such as a continuance, are feasible and could cure the problem[.]" *Cornish*, 272 Md. at 320, 322 A.2d at 886. In *Jourdan v. State*, this Court held that a trial court erred in declaring a mistrial *sua sponte* when the prosecutor became ill shortly after trial began. 275 Md. 495, 511–12, 341 A.2d 388, 398 (1975). We held that manifest necessity did not exist where a short continuance would have allowed another prosecutor sufficient time to prepare for trial in light of the fact that the original prosecutor stated he only had ten to fifteen minutes to prepare. *Id*. We explained:

In the present case, no reason has been suggested why the alternate remedy of a continuance was not feasible. If it would have taken the Assistant State's Attorney until the next morning to get ready for the trial, a continuance until that time could have been granted. Or, if there were some reason (not apparent on this record) why the Assistant State's Attorney could not handle the prosecution the next day or shortly thereafter, the case could have been continued for a reasonable time until the Deputy State's Attorney was able to resume his duties. As the six month jury term of this jury was far from over, the jury could have been called back as soon as the Deputy State's Attorney was ready to resume his duties.

*Id.*

Here, the judge asked the foreperson if additional time for deliberations the next day would be beneficial. The foreperson responded no. However, given Hart's absence, the lateness of the hour, the extent of the jury's deliberations, and the rejection of the request for an additional *Allen* charge after the notice of an impasse, the trial judge's reliance on the foreperson's opinion was not a reasonable alternative to a continuance:

THE COURT: With respect to what you're referring to, the *Allen* charge, basically that's already been given in the jury instruction . . . They've already got this. The foreperson came out. He indicated that, you know, they've taken breaks, they've gone over it, in response to my question, because the note wasn't clear where it says no new information could help. And the response to my question was whether he was talking about information from us or information from the deliberations, and he said both. So based on his responses to my questions I'm not going to ask them to deliberate any further[.]

The judge, however, failed to consider the propriety of proceeding *in absentia*, and the impact Hart's absence could have on the jury. In its unreported opinion, the Court of Special Appeals held:

Due to the factual nature of the inquiries surrounding the trial court's decision to declare a mistrial, we hold that Rule 4-231 required Hart to be present. As Hart was involuntarily absent due to a medical condition, none

- 27 -

of the exceptions to the Rule apply. The declaration of a mistrial in Hart's absence, therefore, was in error under Rule 4-231.

Although the violation of Rule 4-231(b) would be sufficient, our views are confirmed by the analogy to a defendant's right to be present when a verdict is received. A defendant's right to be present at a declaration of a mistrial is similar to the defendant's right to be present for the receipt of a verdict because, as the cases hold, the mere face-to-face contact with the defendant may cause some of the jurors to change their position:

> When a jury returns to the courtroom, faces the accused, and, typically, is subject to a poll of the verdict, the psychological influence of the eye-to-eye contact between juror and defendant may be significant enough to cause a juror to change his or her mind when outside the pressure of the jury room.

*Kimes v. United States*, 569 A.2d 104, 111 (D.C. 1989). The same rationale applies to a mistrial, when the jurors, upon seeing the defendant in court, might change their prior "unequivocal" stances that led to the deadlock in the first place. Thus, we conclude that, in this instance, Hart's [right] to be present was violated by the trial court's order of a mistrial during his involuntary absence. Because of the importance the presence of the defendant may have in their minds of the jury, this error is not harmless.

We agree with this rationale. The decision to declare a mistrial does not fall within an exception to the right to be present under Rule 4-231(b). It is unclear whether any jurors would have changed their minds at the time they were summoned to the courtroom to enter a partial verdict had Hart been present.

Critically, the judge and counsel were aware of the following: Hart's absence due to a medical emergency; Hart did not have the opportunity to waive his right to be present or to consult with defense counsel; and defense counsel could not request a mistrial in his client's absence. As discussed above, the trial judge did not inquire into the voluntariness of Hart's absence or determine whether the absence would be short or prolonged. Instead, the judge outright rejected defense counsel's reasonable request for a short continuance to

- 28 -

ascertain Hart's status.[9]  Granting a short continuance, however, was feasible and would have cured the problem associated with proceeding in Hart's absence.  A continuance would have permitted the jury to adjourn for the evening, allowed time for defense counsel to ascertain Hart's status and confer with his client, and it would have ameliorated, among other things, the court's error in receiving a partial verdict in Hart's absence.  Notably, the prosecutor did not object to defense counsel's request for additional deliberations (although he implied the effort ultimately may be futile).  That these proceedings also occurred late in the evening, at nearly 11 p.m., following a two-day trial is also a relevant factor.

By proceeding without Hart, the court denied the defendant an opportunity to object to the declaration of the mistrial.  Defense counsel objected to any court action beyond fact gathering until he could assess Hart's status and consult with his client.  Under these circumstances, the declaration of a mistrial was premature: manifest necessity—a high degree of necessity—did not exist, because the defendant was involuntarily absent and he did not waive his presence, and the judge did not adopt any reasonable alternatives to the declaration.

We recall that manifest necessity must exist in order to avoid double jeopardy.  *See Simmons*, 436 Md. at 214, 81 A.3d at 390 (describing the "burden of justifying the mistrial" as "a heavy one") (quoting *Washington*, 434 U.S. at 505, 98 S. Ct. at 830, 54 L. Ed. 2d at 728).  The Supreme Court has characterized the burden of proving manifest necessity as a "high degree" of necessity:

---

[9] Prior to and after the colloquy, defense counsel posed the reasonable alternative of continuing the case until the next day.

[I]n *Arizona v. Washington*, the Supreme Court expounded upon Justice Story's "classic formulation" of manifest necessity, noting that "[t]he words 'manifest necessity' appropriately characterize the magnitude of the prosecutor's burden." 434 U.S. at 505, 98 S. Ct. at 830, 54 L. Ed. 2d at 728. The Supreme Court recognized that although "those words do not describe a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge . . . . **we assume that there are degrees of necessity and we require a 'high degree' before concluding that a mistrial is appropriate.**" *Washington*, 434 U.S. at 506, 98 S. Ct. at 830–31, 54 L. Ed. 2d at 728–29. *See also In re Mark R.*, 294 Md. 244, 249–50, 449 A.2d 393, 397 (1982).

To meet this "high degree" of necessity, our cases establish that "to determine whether manifest necessity to declare a mistrial over defense objection exists, the trial judge must engage in the process of exploring reasonable alternatives and determine that there is no reasonable alternative to the mistrial." *Hubbard v. State*, 395 Md. 73, 92, 909 A.2d 270, 281 (2006).

*Simmons*, 436 Md. at 215, 81 A.3d at 390–91 (emphasis added).

This is a unique case involving the interrelationship of the right to be present and manifest necessity. Manifest necessity did not exist on the basis of the record before us, because Hart was involuntarily absent, and the court failed to grant a continuance to determine the expected length of Hart's absence <u>prior</u> to its decision to proceed *in absentia*. We hold that the trial court erred in declaring a mistrial *sua sponte*, because of the court's failure to conduct critical inquiries, which are explained above, prior to exercising its discretion to proceed *in absentia*. Because the declaration of a mistrial occurred in the absence of manifest necessity, a retrial is prohibited on the grounds of double jeopardy. *See Jones v. State*, 17 Md. App. 504, 516, 302 A.2d 638, 645 (1973) ("[T]he question whether retrial following a *sua sponte* judicially declared mistrial without the defendant's consent is prohibited by the double jeopardy clause of the Fifth Amendment is to be

resolved by a determination whether the mistrial declaration was an abuse of judicial discretion.").

## Conclusion

Accordingly, we affirm the judgment of the Court of Special Appeals. The trial court abused its discretion, and violated Hart's right to be present during critical stages of trial. The first error was in answering the jury note in the defendant's absence. The second error—the declaration of a mistrial in the absence of manifest necessity—prohibits retrial on the grounds of double jeopardy. *See Jones*, 17 Md. App. at 517–18, 302 A.2d at 646. Therefore, double jeopardy prohibits a retrial as to the allegations contained in Count 1.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED. PETITIONER TO PAY THE COSTS.**